# The Chicago & Alton Railroad Company

## *v.*

# Adoniram J. Randolph.

1. Negligence—*of contributory negligence.* In an action against a railroad company to recover damages resulting to the plaintiff by reason of injuries received by him in leaping from defendants' train of cars, the plaintiff being a passenger on the train, while the cars were in motion, at a station where the train did not stop, it was *held*, that even if the plaintiff leaped from the car on suggestion of the conductor, and the conductor only

gave it as his opinion that the plaintiff could leap from the train in safety, it was his duty to exercise his judgment whether or not it was safe, and if the danger was so apparent that a prudent man similarly situated would not have attempted the leap from the train, then the plaintiff was guilty of negligence, and should not be permitted to recover. The plaintiff, if left to act voluntarily, and not under constraint, was bound to exercise ordinary prudence.

2. CARRIERS *of passengers and freight—rights of carriers and passengers.* Railroad companies have a legal right to appropriate a portion of their trains exclusively to the carrying of freight, and to entirely exclude passengers from the same. Their obligations to the public only require them to furnish sufficient passenger trains to accommodate the travel, and such freight trains as the business of the country along their line requires. They are not required to carry passengers on their freight trains, or freight on their passenger trains. But they may, if they choose, do either.

3. When a passenger purchases a ticket, he only acquires the right to be carried according to the custom of the road. He has a right to go to the place for which his ticket calls, on any train that usually carries passengers to that place. But he does not acquire the right to insist that the company shall carry him out of the customary course of their road. It is his duty, when he obtains a ticket, to inform himself as to the usual mode of travel on the road, and, so far as the customary mode of carrying passengers is reasonable, he should conform to it.

4. Railroad companies, furnishing reasonable means for carrying passengers to all their stations, have the right to run trains that only stop at designated or the principal stations on their road. And when a person purchases a ticket, he should ascertain, before getting on a train, whether such train will only stop at the principal stations, or at all of them; and were he to get on one that was not accustomed to stop at the station to which he desired to go, and for which his ticket called, he would not, without an agreement to stop, have any right to insist upon the company's changing the course of their business for his accommodation, and to serve his convenience.

5. And should a person get on a train, without the consent of the employees of the road, not accustomed to stop at the station to which he desired to go, and for which his ticket called, the taking up of his ticket merely, without an agreement to stop at the desired station, would not amount to an undertaking by the company to put him off at that place.

6. In such a case, the passenger is in the wrong, and has no right to insist that he should be safely put off at the point he desires, or to be carried through without charge.

APPEAL from the Circuit Court of Logan county; the Hon. JOHN M. SCOTT, Judge, presiding.

The opinion states the case.

Mr. A. W. CHURCH, and Messrs. HAY, GREENE & LITTLER, for the appellants.

Messrs. WELDON, TIPTON & BENJAMIN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This action was brought by appellee, in the Logan circuit court, against appellants, to recover for damages received by him while leaving appellants' train of cars, about the twenty-first of September, 1868. It appears that, on the evening of the day the injury was received, appellee procured a ticket at Lincoln for the station at Atlanta, and got upon a freight train while it was still in motion, the employees not intending to stop at the station at Atlanta. There was another passenger got on the train at the same time, who was going to the same place. The train was a through stock and freight train, which stopped regularly at certain stations for fuel and water, but not at others, unless signaled to do so to take stock from them, or where there was freight to be delivered.

There is no evidence as to whether appellee made any inquiry, when he purchased his ticket, to learn whether the train would stop at Atlanta. Appellee, and the other passenger who got on the train at the same time, both swear that before leaving Lincoln, the conductor informed them that it would. This is denied by the conductor, who swears he was not in the caboose while at Lincoln, and not until they reached Lawnsdale, when he took up the tickets of appellee and the other passenger, when, he swears, he informed them the train would not stop at Atlanta, unless there should be stock at that point for shipment, but that he would run very slowly on the grade south of Atlanta, where they might jump off safely if they chose, which they agreed to do. The conductor seems to be corroborated in his statement by the brakeman and another passenger on the train.

It appears that, when the train reached the grade and was running slowly, the conductor informed appellee and the other passenger for Atlanta, that then was their time to leap from the train, which they refused to do, whereupon they were informed that the train would not stop. On reaching that point, both men went out on the platform, and appellee leaped from the train, and in falling injured himself, but the other passenger remained on the train and was carried to the next station, where he was put off without injury. On a trial in the court below, appellee recovered a verdict for $1200, upon which judgment was rendered, and the case is brought to this court on appeal, and various errors are assigned.

It is contended by appellee, that he leaped from the train under the orders of the conductor; but on the other side it is denied that the conductor gave any such orders, or that he, at that time, even made any suggestion that he could or might leap from the train in safety. On the trial, appellants asked this instruction, but it was refused :

" The court further instructs the jury, for the defendant, that even if the jury should believe, from the evidence, that the conductor or brakeman told the plaintiff, at the time he jumped off the train, that he would do so with safety, and yet left it voluntary with plaintiff to get off or not, then what the conductor or brakeman might have said at the time (if the jury believe, from the evidence, anything was said by them) did not release plaintiff from the duty of exercising reasonable judgment and caution as to whether it was safe to get off or not. If the jury believe, from the evidence, that, under all the circumstances existing at the time, a man of ordinary prudence, situate as the plaintiff was, would not have jumped off, the jury should find for the defendant."

It is urged that it was error in the court to refuse this instruction.

33—53RD ILL.

In the conflict in the testimony, this instruction should have been given. If the conductor only gave it as his opinion that appellee could leap from the train in safety, and appellee acted on his suggestion, still it was his duty to exercise his judgment whether or not it was safe; and if the conductor only gave it as a matter of opinion, still, if the danger was so apparent that a prudent man, similarly situated, would not have attempted to leap from the train, then appellee was guilty of negligence, and should not be permitted to recover. He was bound to exercise ordinary prudence, if left to act voluntarily, and was not acting under constraint. The instruction only asserted these propositions, and it should have been left to the jury to determine whether appellee was under constraint when he leaped, and if not, whether he acted with ordinary prudence.

It is also urged that the court erred in refusing to give appellant's tenth instruction, which is this:

"If the jury believe, from the evidence, that the train in question sometimes did and sometimes did not stop at Atlanta, and that this was known to the plaintiff before getting on said train, or before the same left Lincoln, then it was the duty of the plaintiff to ascertain, from some one authorized person, before becoming a passenger, whether said train would or would not stop at Atlanta on the trip in question. And if the jury believe, from the evidence, that the plaintiff got on said train, knowing such stoppage to be uncertain, then the defendants were not bound to stop said train at Atlanta for his accommodation, and the taking of plaintiff's ticket by the conductor did not constitute a contract to stop at Atlanta."

No one will question the legal right of a railroad company to appropriate a portion of their trains exclusively to the carrying of freight, and to entirely exclude passengers from such trains. Their obligations to the public only require them to furnish sufficient passenger trains to accommodate the travel, and such freight trains as the business of the country along

their lines requires.   They are not required to carry passengers on their freight trains, or freight on their passenger trains. But they may, if they choose, do either.   It then follows, that when a passenger purchases a ticket, he only acquires the right to be carried according to the custom of the road.   When he obtains a ticket, he has a right to go to the place for which it calls, on any train that usually carries passengers to that place. But he does not acquire the right to insist that the company shall send him on a special train, or out of the customary course of their road.

When a traveler obtains such a ticket, he should inform himself as to the usual mode of travel on the road, and so far as the customary mode of carrying passengers is reasonable, he should conform to it.   These companies have passenger trains that only stop at the principal stations on their roads, and the right, so far as we know, has never been challenged, when they furnished a reasonable number of other trains, stopping at all stations, to accommodate public travel.   And when a person purchases a ticket, he should ascertain whether the train will only stop at the principal stations, or at all of them, before he gets on a passenger train; and were he to get on one that was not accustomed to stop at the station to which he desired to go, he would not, without an agreement to stop, have any right to insist upon the company's changing the course of their business for his accommodation.   The requisite information can always be had from the agent when the ticket is procured, and it is but reasonable to require passengers to obtain the information and to act upon it.

If, then, the company may run passenger trains that only stop at designated stations, furnishing reasonable means for carrying passengers to all their stations, it is more reasonable that they may run freight trains which only stop at certain stations for fuel and water, or at such other stations as the transportation of stock or freight may require.   And it is but reasonable that the company may exclude all passengers from such trains, or only carry them to the places at which

they are accustomed to stop; and if a person gets upon such a train, without any agreement that they will stop at an unusual place of stopping, he can not require the company to change the usual course of their business for his accommodation, and to serve his convenience. Should a person get on such a train, without the consent of the employees of the road, the taking up of his ticket merely, without an agreement to stop at the desired station, would not amount to an undertaking by the company to put him off at that place. In such a case, the passenger is in the wrong, and has no right to insist that he should be safely put off at the point he desires, or be carried through without charge. The instructions are in harmony with these views, and should have been given. For the refusal to give these instructions, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*