D. M. EDGERTON, *as Receiver of the Inter-state Consoli-
dated Rapid Transit Railway Company*, v. MICHAEL
O'NEIL.

NO. 73.

1. EVIDENCE—*Demurrer.* A demurrer to the evidence should be
overruled when the evidence fairly tends to establish every mate-
rial allegation of the petition.

2. STREET-RAILWAY—*Rights.* A street-railway has not exclusive
rights to the use of its tracks and ground covered by it, and is
constructed and operated on the theory that it is not an additional
burden on the highway, but is merely an additional use contem-
plated when the street was laid out. This necessitates a liberal
construction in favor of the rights of the public, and the law is
averse to concede any exclusive rights to the portion of the street
to railway companies, except where the necessities of the case
demand.

3. ——— *Contributory Negligence.* Where one acts erroneously
through fright or excitement, induced by another's negligence, or
adopts a perilous alternative in the endeavor to avoid an injury
threatened by such negligence, or when he acts mistakenly in en-
deavoring to avoid an unexpected danger negligently caused by
the defendant, he is not guilty of contributory negligence as a
matter of law.

4. PERSONAL INJURY—*Damages*—*Pleading.* A personal injury
from a single wrongful act or negligence is an entirety, and affords
ground for only one action. In that action recovery may be had
for all damages suffered up to the time of trial and for all which
are shown to be reasonably certain or probable to be suffered in
the future ; and when these are the necessary and proximate re-
sult of the act complained of, they need not be specially averred,
but are recoverable under the general allegation of damages.

Edgerton v. O'Neil.

MEMORANDUM. — Error from Wyandotte court of common pleas; T. P. ANDERSON, judge. Action by Michael O'Neil against D. M. Edgerton, as receiver of the Inter-state Consolidated Rapid Transit Railway Company to recover for personal injuries. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. The opinion herein, filed September 9, 1896, states the material facts.

*James Black*, and *Pratt, Ferry & Hagerman*, for plaintiff in error.

*C. C. Dail*, and *L. F. Bird*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. : This was an action by Michael O'Neil, as plaintiff, against D. M. Edgerton, as receiver of the Inter-state Consolidated Rapid Transit Railway Company, for an injury to said O'Neil caused by a collision of one of the trains of the said railroad company with a wagon in which O'Neil was seated, and which at the time was attempting to cross the tracks of the street-railway. The accident complained of occurred at the street crossing at Ninth and Central avenue in Kansas City, Kan., upon what is known as the "River View" line, a branch of the main line, and connecting therewith at River View station in Kansas City, Kan., and running through said city to Grand View station, its terminus, a distance of about two miles. This is a double-track road operated through said city, the trains of which are drawn by small dummy engines, the round trip being made in about 20 minutes. On the return trip, that is, from Grand View east to River View, the trains are run backward, not being turned at the western terminus, although switches are pro-

vided at that point for that purpose.   About 100 yards
west of the Ninth street crossing is a power-house, or
car barn; between it and the place of collision, and
about 200 feet distant therefrom, is a curve in the
track.   The avenue slopes with considerable grade
from Tenth street to Ninth street.   The train which
caused the injury was at the time going east and was
running backward.   On the day of the accident the
plaintiff, O'Neil, had been at work grading on Tenth
street and Central avenue, and between 6 and 7 o'clock
was returning from his work to his boarding-house,
seated in the rear end of a two-horse wagon which was
driven by one Frank Buchanan.   They had proceeded
down Central avenue, on the north side thereof, from
Tenth street to Ninth street, and at Ninth street the
driver attempted to cross the avenue.   To do so, he
was compelled to cross both tracks, and he had crossed
the north track, and was in the act of crossing the south
when the train was discovered close upon them.   The
team and wagon escaped, but O'Neil, jumping there-
from, was struck by the train and injured.   The jury
made special findings of fact as follows:

"1.  What was the speed of the train in question?
Ans.  About 20 miles per hour.

"2.  At what distance could the approaching train
have been seen by, at and before the actual crossing of
the track?   A.  About 600 feet.

"3.  Did or not the plaintiff look to see if a train
was approaching at the time before crossing the track
or right of way of the defendant, after leaving the road
the plaintiff was on?   A.  Yes.

"4.  If the plaintiff did look, at what distance from
and before attempting to make the crossing?   A.  About
20 feet.

"5.  At what distance was train from plaintiff when
he first saw it, and could he then have escaped in
time to have avoided the accident?   A.  About 45 or
50 feet; to the best of our knowledge, no.

"6. Did the plaintiff at any time, before crossing the track of the defendant, stop and either look or listen for any approaching train? A. Stopped, no. Looked, yes.

"7. What time of day did the accident occur? A. Between 6 and 7 P. M."

"11. Was plaintiff guilty of any negligence; if so, in what respect? A. No.

"12. Was, or not, Key, the conductor of the train in question, on the platform at the east end of the car which approached and came in collision with plaintiff? A. No.

"13. If on the platform of the car first approaching the crossing in question, was he or not on the lookout to avoid danger to plaintiff or others. A. Was not on platform.

"14. While on said platform, was he or not in a position to be in the immediate command of the brakes of said car? A. He was not on platform.

"15. On said platform, was he in a position to immediately command and use the bell-rope? A. He was not on platform.

"16. Did, or not, said Key, while on said platform, as soon as he discovered the plaintiff, or wagon and team, make use of the bell-rope and of the brakes as soon as he discovered that said team and wagon were about to cross the track? A. No."

These were all the special findings asked for by the defendant. Our attention is directed to six assignments of error, which we will consider in the order in which they are presented.

1. In overruling the defendant's demurrer to the testimony.

The allegations set out in the petition are that the defendant ran and operated its road in a grossly negligent and careless manner by running the trains thereon backward (that is, with engines or locomotives attached to the rear end of the train); that such backward running is unnecessary and highly danger-

ous to the public safety; that it neglected its duty by not keeping a careful watch on the front end of the train to avoid collisions; that the train in question was running at a high rate of speed, and it failed to sound the whistle, ring the bell, or give any other signal of approach of danger. Upon all of these allegations, testimony was introduced by the plaintiff which not only tended to prove, but we think established, each and every one of them. In fact, we might say, they stood, for the purposes of demurrer, uncontradicted, and the only fact that could be said to be disputed, or upon which there was any conflict of testimony, is as to the negligence of the plaintiff in attempting to cross the track. The rule is well established, that where there is a conflict of testimony reasonable men might differ about, then it becomes a question of fact for the jury. And upon this proposition the jury found that the plaintiff was not guilty of any negligence. And this finding is upheld by the testimony introduced by the plaintiff. And should we admit that the testimony upon this proposition was weak, we would not feel warranted in reversing the judgment in this case for that reason alone, when it is so conclusively shown that the employees of the defendant in charge of the train were so grossly negligent in its management, and where the most that could possibly be said of the plaintiff's conduct is that, if he was negligent at all, his negligence was very slight. The supreme court of this state has repeatedly held, that where the negligence of one party is gross and that of the other is slight, notwithstanding the slight negligence the party may recover. (*Sawyer v. Sauer*, 10 Kan. 466; *Pacific Rld. Co. v. Houts*, 12 id. 328; *K. P. Rly. Co. v. Pointer*, 14 id. 37; *W. & W. Rld. Co. v. Davis*, 37 id. 749.)

2. The admission of evidence of any other accident on this road than this one in question.

This needs but little comment. We have examined the record very carefully in this connection and fail to find any such testimony admitted over the objection of the defendant. In fact, we find that, upon objection made, it was invariably sustained, or a motion to strike out was granted. It is true some testimony looking in this direction was admitted, but without objection. The question is raised for the first time in the brief of counsel, and we cannot, therefore, understand how the defendant was prejudiced thereby.

3. That the court erred in giving the following instruction:

"4. If you find that the plaintiff was on a public street, and at a public crossing, when he was struck by the defendant's train, he will not be considered a trespasser upon the rights of defendant by being on its track, the right of the plaintiff and defendant in said street being equal, and the defendant was bound to run its train with reference to the plaintiff and all other persons rightfully on said street, and it was bound to use ordinary care and diligence so as to avoid injuring him."

The petition alléges, and it is admitted in this action, that this line of road was operated upon the public highway and public street in the city of Kansas City, Kan., and that the accident occurred at a public crossing. This being true, the plaintiff cannot be considered such a trespasser as would relieve the railway company from exercising ordinary care and diligence toward him. In fact, he would not be a trespasser at all. The company would be bound to run its trains with reference to him, and to every other person who might be rightfully occupying the

the street.   Such persons would have the same right to be in the street as the railway company.   If the plaintiff and the railway company each has the right to use said ground, then it was incumbent upon each alike to use ordinary care and diligence to prevent and avoid injuries.   In commenting upon this proposition, Mr. Justice VALENTINE, in *K. P. Rly. Co. v. Pointer*, 9 Kan. 628, said : "In fact, in this case the legal right of the railway company and that of the public to use this ground as a street seems to be about equal.   Both derive their right from a city ordinance."   And, from the record in this case, it must be taken for granted that the public used this ground for a street before the railroad was built.

"The railway and the streets are equally highways. A legitimate use of either is a public right, and this right rests on the same basis in both.   Parties are bound to care and diligence in using either, so their use shall not work an injury to others with the same rights.   Persons crossing a railroad on a street or public highway are only exercising an undoubted right ; but, in so doing, they must use the same care and vigilance for their safety, and the safety of persons running on the railway, that the operators of the train use.   In most cases, as the traveler on the highway can arrest his progress easier and quicker than a railway-train, it would be his duty to stop on the approach of danger ; but this obligation does not arise from the superior right of the railroad, but from the condition of the parties."

And we think the rule obtains in this state that "the people have the same right to travel on the ordinary highway as the railroad companies to run trains on the railroad (*A. T. & S. F. Rld. Co. v. Morgan*, 43 Kan. 13), and that their rights and duties are equal."   And this rule is founded upon reason and supported by the great weight of authorities.

But it is contended by the defendant in error that it should not be applied to street-railways. We fail to see any good reason for this argument. A street-railway has not exclusive rights to the use of it's tracks and ground covered by it, as in case of an ordinary railroad company, and the fact that a street-railway often occupies a large portion of crowded streets, and that it is constructed and operated on the theory that it is not an additional burden on the highway, but is merely an additional use contemplated when the street was laid out, necessitates a liberal construction in favor of the rights of the public, and the law is averse to concede any exclusive right to that portion of the street to railway companies, except where the necessities of the case demand. And the great weight of authority that refers to street-railways holds that, at a crossing, neither party has any paramount right of way; in other words, the rights are equal. While it is true, as between a street-car and an ordinary vehicle moving along the track, the car would have the superior right of way, this superior right of the car does not authorize its owners wilfully or negligently to injure one who refuses to recognize it. In *O'Neill v. Railway Co.*, 129 N. Y. 125, the court says:

"As the cars must run upon the tracks, and cannot turn out for vehicles drawn by horses, they must have the preference; and such vehicles must, as they can, in a reasonable manner, keep off from the track, so as to permit the free and unobstructed passage of the cars. In no other way can street-railways be operated. As to. such vehicles, the railways have a paramount right to be exercised in a reasonable and prudent manner; but a railway crossing a street stands upon a different footing. The car has a right to cross and must cross the street; and the vehicle has the right

to cross and must cross the railroad track.   Neither has a superior right to the other."

As was said in *Improvement Co. v. Stead*, 95 U. S. 165 :

"The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collisions, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country on the same level.   The people have the same right to travel on the ordinary highway as the railroad companies have to run trains on the railroad."

4.  In giving the following instruction :

"If you find from the evidence that the plaintiff or his driver drove upon defendant's track without looking back to see whether an approaching train was in sight, still such carelessness of the plaintiff would be no excuse for the defendant, its officers or servants, recklessly or wantonly to injure him ; and if you find from the evidence that, after the plaintiff was upon defendant's track, and after the defendant, its officers or servants, saw, or by the exercise of ordinary prudence could have seen, that the plaintiff was upon its track, or in the act of going upon it, then said defendant, its officers, servants, and employees, owed a duty to the plaintiff to use all reasonable means in their power to avert the accident ; and if you find that the defendant, its officers, servants, and employees, did not attempt to stop the train as soon as plaintiff was by them seen to be about to cross the track, but allowed the train to run down upon the plaintiff, and only stopped the train when the collision of the train with the wagon in which plaintiff was was imminent, and such train could have been stopped before it collided with such wagon, by the exercise of ordinary care, then you will find for the plaintiff."

We cannot accept the theory of the defendant that this instruction was erroneous because it submits to the jury a question not in this case.   Upon one branch

of the negligence charged it is an important question, proving the conduct of the employees operating this train, and we think there is ample testimony to base this instruction on. It is also urged that this instruction gave the jury the right to guess as to the distance in which a train, running at the high rate of speed testified to, could be stopped. This is not well founded. It was for the jury to say from the testimony what rate of speed the train was running. They were at liberty to say what testimony had most weight; which they would accept — that of the engineer, or the other witnesses. If they accepted that of the former, then they could find very readily from the testimony whether the train was attempted to be stopped, or could have been stopped in time to have averted the accident. If they believed the other testimony as to the rate of speed, then we concede that they could not tell in what distance the train could have been stopped, as there is no testimony upon this proposition. Still, they could tell whether an attempt was made to stop the train as soon as the employees saw the plaintiff was about to cross the track; but they evidently disregarded the testimony of the engineer, giving more weight to that of the other witnesses, and so found; and they did not find in reference to the distance in which the train could be stopped, but did find "that no attempt was made to stop when the plaintiff was discovered on the track." It is very clear that this instruction did not mislead the jury, nor was the defendant prejudiced thereby; and, even if the contention of the plaintiff in error was true, the giving of an instruction upon an abstract proposition of law, and which is irrelevant to the issues in the case, is not reversible error, unless it may fairly be inferred that the jury was misled thereby; nor will an inapplica-

ble, and therefore improper, instruction to the jury require or authorize a reversal of the judgment of the trial court, where such instruction could not have prejudiced any of the substantial rights of the complaining party. (*Zimmerman v. Knox,* 34 Kan. 245; *Ft. S. W. & W. Rld. Co. v. Karracker,* 46 id. 511.)

5. That instructions 10 and 16 are in direct conflict, and that the giving of both of them was certain to confuse the minds of the jury and mislead them. Instruction 10 is as follows:

"If you find from the evidence that the plaintiff was placed in peril by the carelessness and recklessness of the defendant, its officers, servants, and employees, the propriety of an attempt to escape a reasonably apprehended danger is not to be determined by what a person of ordinary prudence and care would have done under the circumstances."

Instruction 16 is as follows:

"And it is further the law, that if the jury believe from the evidence that the plaintiff contributed to said injury by leaping or jumping from the place where, if he had remained, he would not have been injured, and in so leaping or jumping he did not act as a reasonable and prudent man would have done under the circumstances, then the plaintiff is guilty of contributory negligence, and the jury should find for the defendant; but in determining whether or not the plaintiff acted with reasonable care and prudence in jumping as he did, you must take into consideration the situation in which the plaintiff was placed at the time — whether his position was one of great danger, what time he had for deliberation, and all the other conditions and circumstances immediately attending the accident."

We fail to see anything misleading or confusing in these instructions, or where they conflict. That they did not confuse or mislead the jury is clearly shown by the special findings. We think that the trial judge

has very clearly, concisely and ably presented the law in these two instructions.

" When one acts erroneously through fright or excitement, induced by another's negligence, or adopts a perilous alternative in the endeavor to avoid an injury threatened by such negligence, or when he acts mistakenly in endeavoring to avoid an unexpected danger negligently caused by the defendant, he is not guilty of contributory negligence as a matter of law."

See *Railroad Co. v. Cantrell*, 37 Ark. 519 ; *Railroad Co. v. McCurdy*, 45 Ga. 288 ; *Fowler v. Railroad Co.*, 18 W. Va. 579 ; *Railroad Co. v. Aspell*, 23 Pa. St. 147 ; *Railroad Co. v. Randolph*, 53 Ill. 510 ; *Coal Co. v. Healer*, 84 id. 126 ; *Kelly v. Railroad Co.*, 70 Mo. 604 ; *Railroad Co. v. Stout*, 53 Ind. 143 ; *Karr v. Parks*, 48 Cal. 188 ; *Delamatyr v. Railroad Co.*, 24 Wis. 578 ; *Railroad Co. v. Manson*, 30 Ohio St. 451.

"Even though the injured person might have escaped the injury brought upon him but for his hasty and mistaken conduct in the face of danger, yet defendant's negligence is the sole juridical cause for the injury and the plaintiff's error of judgment only its condition, when plaintiff was placed in the position of danger without previous negligence on his part. When the negligence of the defendant or its agent places a party in such a situation that the danger of remaining where he is at the time is apparently as great as would be encountered in jumping or leaving it, the right of compensation or recovery is not lost by doing the latter, and this rule holds good even where the event has shown that he might have remained where he was with more safety." (*Railroad Co. v. Aspell*, supra ; *Stokes v. Saltonstall*, 13 Pet. 181.)

6. That instruction 17 is erroneous as to the measure of damages, in that it told the jury they might allow plaintiff for loss of time, physical suffering up to the time of trial, and such further damages as appear to be the probable result of plaintiff's injury — there

being no allegation of damages in the petition for loss of time.

Instruction 17 is as follows:

"If you find that the plaintiff is entitled to recover, you will find for him such an amount as you shall deem fair and just in view of the injuries sustained, without regard to the character of the parties or the ability of the defendant to pay. There is no exact rule for the computation of damages in the case of personal injuries; but if the plaintiff is entitled to recover you may allow for loss of time and for physical pain which has resulted up to the present time, and, if the plaintiff is still disabled from such injury, such further damages as appear from the evidence to be the natural and probable result of such injuries."

The law aims to afford full redress for personal injuries as well as for others. The sufferer is entitled to compensation from the person by whose fault the injury occurred for all damages sustained that are the necessary and proximate result of the act complained of, such as physical and mental pain, loss of time, injury to business, and diminished working capacity. The last three mentioned represent very often the chief pecuniary loss from personal injuries. None of these is shown for the purpose of affording or establishing the measure of damages, but to aid the jury in estimating a fair and just compensation for the injuries sustained. A personal injury from a single wrongful act or negligence is an entirety, and affords ground for only one action. In that action recovery may be had for all damages suffered up to the time of the trial, and for all which are shown to be reasonably certain or probable to be suffered in the future. And we understand the rule to be, that when these are the natural and proximate result of the act complained of they need not be specially averred,

but are recoverable under the general allegation of damages. In other words, all damages which are not the necessary and proximate result of the act complained of are special and must be specially alleged. In *Shepard v. Pratt*, 16 Kan. 215, the court says:

"It is unnecessary in most cases, where the demand is unliquidated and sounds wholly in damages, and where there is but a single cause of action, to state specially and in amounts the different elements or items which go to make up the sum total of damages. It is enough to claim so much in gross as damages for the wrong done. In such a case, the only limitations upon the size of the verdict are, that it shall not exceed the gross amount claimed, and that the jury in arriving at it shall have had regard to the true measure of damages."

And the rule has been laid down by our supreme court in *City of Atchison v. King*, 9 Kan. 551, as follows:

"The measure of recovery is for loss of time, for expenses, and for physical pain which had resulted from the injury up to the time of the commencement of the action; and if the plaintiff is still disabled from such injury, such further damages as appear from the evidence to be the natural and probable result of such injuries."

And in *Townsend v. City of Paola*, 41 Kan. 591, it was held:

"It is error to instruct the jury that the injured party can only recover for damages resulting from the injury up to the time of the commencement of the action. . . . The injured party is entitled to recover all damages resulting from the injury, whether present or prospective."

In that case the instruction given was as follows:

"If you find that the plaintiff is entitled to recover,

the measure of damages is compensation for the loss of time, for the expenses, and for the physical pain which had resulted from the injury *up to the time of the commencement of this action;* and if plaintiff is still disabled from such injury, such further damages as appear from the evidence to be the natural and probable result of such injuries."

The court held that this instruction was erroneous, and prejudicial to the rights of the plaintiff, inasmuch as it told the jury to estimate the damages from the time the injury occurred, January 31, until the commencement of this action, February 10, which only covered about 10 days of the time, and under it the jury were not allowed to take into account the condition of the plaintiff in error at the time of the trial, in October of the same year, or at any time between the commencement of the action and the trial.   In commenting upon this instruction, the court says :

"Elements of damages in cases of this character are loss of time from business or employment, loss of capacity to perform the kind of labor done before the injury or for which the person is fitted, the expenses incurred for medical services, purchase of medicine, the cost of nursing, etc., and the physical pain suffered.  (*City of Atchison v. King*, 9 Kan. 551.) In estimating the amount of damages to be given for permanent injury, the elements to be considered are, the former occupation of the plaintiff, and the amount of money received from it, in addition to the physical suffering, and some other elements that particular cases may warrant. [Citing numerous authorities.] These are rules by which the damages are measured, whether the injuries inflicted were temporary or permanent in their character. . . . In actions for personal injuries, the plaintiff recovers for permanent loss of earning power, which include both pecuniary loss he has sustained, and that which he is likely to sustain during the remainder of his life." [Citing numerous authorities.]

U. P. Rly. Co. v. Mahaffy.

The text-writers on the law of damages all say: "The injured party is entitled to recover in one action compensation for all damages resulting from the injury, whether present or prospective."

The allegations of the petition are sufficient to warrant the admission of testimony upon all the elements of damages and the testimony admitted is sufficient to base these instructions upon, and they direct the attention of the jury to the proper items to be considered by them in estimating the amount to be returned in their verdict. If the allegations in the petition were in any manner indefinite and uncertain, as alleged by counsel, application should have been made to require the plaintiff to make the petition more definite and certain by amendment.

The judgment of the court below will therefore be affirmed.

All the Judges concurring.