No. 38,200

Martha Margaret Adams, Administratix of the Estate of Charles Edward Adams, Jr., Deceased, *Appellee,* v. Leslie Dennis, *Appellant.*

(229 P. 2d 740)

Opinion filed April 7, 1951.

*Lester Luther,* of Topeka, and *W. R. Martin,* of Wichita, argued the cause, and *George B. Collins, C. L. Williams* and *Oliver H. Hughes,* all of Wichita, were with them on the briefs for the appellant.

*James A. Williams,* of Dodge City, argued the cause, and *Dale H. Corley* and *Clyde P. Daniel,* both of Garden City, and *C. W. Hughes,* of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action for damages for wrongful death in an automobile accident. Defendant appeals from an order overruling his demurrer to plaintiff's evidence.

For present purposes it may be said the pleadings disclosed the following: In her petition plaintiff alleged that she was the duly appointed and qualified administratrix of the estate of Charles Edward Adams, Jr., hereafter referred to as Adams; that on the evening of July 27, 1949, Adams was a passenger in an automobile driven by Duane Hendershot traveling west on U. S. Highway 154 east of Bucklin, Kansas, and as the automobile approached a private drive on the Dennis land on the south side of the highway, defendant Dennis drove his pickup truck from behind a tree onto the highway and into the path of the Hendershot automobile; that at the same time a third automobile was approaching from the west; that Hendershot first attempted to pass the Dennis truck on the right side but was unable to do so on account of the close proximity of the ditch and turned to the left to try to pass the Dennis truck on the left; that on account of the close proximity of the car

coming from the west Hendershot was unable to pass the Dennis truck and his automobile went into the ditch on the south side of the highway, turned over and Adams received injuries from which he died. It was alleged that Dennis was negligent in failing to stop before entering upon the highway from the private drive, in failing to look for approaching traffic, in failing to see the Hendershot car, in failing to yield the right of way, and in turning left on the highway across the line of travel of the Hendershot car and occupying Hendershot's side of the road at a time when his car was so close to defendant's truck as to constitute an immediate hazard, and that such negligence was the proximate cause of Adam's death.

Defendant's answer charged that Adams and Hendershot were engaged in a joint venture and that the damages sustained were caused and contributed to by the negligent acts of Adams and Hendershot in seventeen particulars, which will be referred to later insofar as is necessary.

At the trial extensive stipulations were made which included that Adams and Hendershot were making the automobile trip for their mutual benefit and each had an equal voice in the conduct of the trip and the management of the automobile; that a private drive opens out from the Dennis land on the south side of the highway and that about fifty feet east of the driveway and near the edge of the highway was a large tree in full foliage. Evidence in support of plaintiff's allegations was received, and at the close defendant demurred for the reason no cause of action was proved; that the evidence proved defendant was not guilty of any act of negligence but did prove that Adams and Hendershot were guilty of negligence. This demurrer was overruled and defendant offered his proof and apparently plaintiff offered some rebuttal, when defendant renewed his previous demurrer, which was again overruled. By way of explanation it is noted the cause was submitted to a jury, which failed to agree. In due time defendant perfected his appeal from the ruling on the demurrer.

Our review of the evidence is made in view of the fact that the only questions involved are whether Dennis was guilty of negligence, and if he was, whether Adams and Hendershot were guilty of contributory negligence, and also in view of our oft stated rule that in testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall con-

sider the evidence favorable to the plaintiff and disregard that unfavorable to him, shall not weigh any part that is contradictory nor any differences between his direct and cross-examination, and if, so considered, there is any evidence which sustains the plaintiff's case the demurrer shall be overruled.

The evidence disclosed the following physical features: U. S. Highway No. 154 is a hard surfaced road which runs east and west along the north side of the Dénnis farm. On the Dennis farm there are a house, barn and improvements and from the immediate area about them a private roadway runs in a northwesterly direction to the highway. About 50 feet east of the private roadway and close to the south edge of the highway is a large tree with branches to the ground and with a diameter of about 30 feet. About 2,000 feet east of where the private drive meets the highway is a rise of ground and from that point west the view is unobstructed to a point some distance west of the private driveway.

The evidence as to events leading up to Adams's death disclosed that Adams and Hendershot were riding west in a Mercury coupe driven by the latter; that at the time they reached the point 2,000 feet east of the private driveway, they were going at a speed of about 80 miles per hour. Hendershot saw the Dennis pickup truck going out of his yard to the private driveway and toward the highway at a speed of from 10 to 15 miles per hour. Hendershot slowed down to a speed of about 65 miles per hour. He stated he thought Dennis would stop at the highway. Dennis passed behind the tree and three or four seconds later came from behind the tree and went upon the highway and turned to the left or west. At the time Dennis came from behind the tree and upon the highway Hendershot was about 300 feet east of the driveway and a third car was approaching from the west. Hendershot thought there was room to pass Dennis on the north side and speeded up and drove so that his right wheels were on the north shoulder, but when he got within 100 feet Dennis had come over to the north side of the highway and had turned to the west so that Hendershot did not have room to pass between him and the ditch on the north side of the highway and he tried to turn to the left and did so. In doing so he avoided a collision with Dennis but lost control of his car which went into the south ditch and turned over. Adams was thrown out and received injuries from which he died.

Appellant argues that there is no statute which requires him to stop before entering upon the highway from his private driveway,

and that the only statute bearing on the matter is G. S. 1949, 8-553, which reads as follows:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."

He seems to concede inferentially that under that statute it was his duty to have yielded the right of way to Adams and Hendershot if the word "approaching" as used in the statute be construed to mean "in proximity to" or "within the limits of danger," and as authority it should be so construed he directs attention to *Packar v. Brooks*, 211 Minn. 99, 300 N. W. 400, and *Wakefield v. Horn*, 109 Cal. A. 325, 293 Pac. 97. On that theory he argues that plaintiff's evidence discloses that as Adams and Hendershot were 300 feet away when he came up to the highway, their car and his truck were not in proximity to each other nor within the limits of danger. In our opinion the statute above quoted must be read in connection with the preceding statute (G. S. 1949, 8-552) which provides that the driver of a vehicle shall stop at the entrance to a through highway, shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on said through highway as to constitute an immediate hazard. It may be conceded that a private driveway meeting a through highway does not constitute an intersection as that word is defined in the statute (G. S. 1949, 8-501), but that section does set a standard which seems applicable to the case at bar, and a standard for which appellant contends in part. Appellant says there was no evidence he looked to the east, but had he looked he would have seen only Hendershot's car at a distance of 300 feet away and that he had ample time to cross the highway ahead of the oncoming car. The argument stops short of all the facts. If appellant did not look he was negligent. If he did look he must have seen the Hendershot car coming at no less than 65 miles an hour. Stated another way, Hendershot's speed would bring his car to the driveway in about 3 seconds. Further the evidence does not disclose that Dennis merely crossed from one side to the other—he drove upon the highway and turned directly along the highway in the path of the oncoming Hendershot car. It cannot be said as a matter of law he was without negligence.

Appellant also contends that plaintiff's evidence disclosed that Adams was guilty of negligence contributing to his injuries and death. He directs attention to the stipulation that Adams and

Hendershot were engaged in a joint venture and that each had an equal voice in the management of their automobile, and states that any defaults of Hendershot are chargeable to Adams, and that may be conceded. Appellant's argument that Adams was guilty of negligence is summarized. Our attention is directed to G. S. 1949, 8-532, providing for speed restrictions on the driving of motor vehicles, to the definition of contributory negligence in *Cruse v. Dole*, 155 Kan. 292, 295, 124 P. 2d 470, and to the allegations of negligence contained in the answer, and it is then argued that Hendershot saw the Dennis truck proceeding along the private drive toward the highway when Hendershot was 2,000 feet to the east; that he took his foot off the throttle and slowed down to 65 miles per hour but did not use his brakes and when Dennis reached the highway Hendershot was about 300 feet away and then speeded up and first attempted to pass on the right side of Dennis and when about 100 feet from Dennis then attempted to go to the left with the result his car was upset. Expanding on the facts as stated it is contended that Hendershot's speed contributed; that he did not correlate his speed and ability to stop (*Eldredge v. Sargent*, 150 Kan. 824, 832, 96 P. 2d 870); that Hendershot's conduct fell below the standard to which he should have conformed for his own protection, and that all of plaintiff's evidence disclosed that Hendershot was guilty of negligence which was the legal cause of the injuries and death of Adams. In support of his argument appellant directs our attention to certain of our decisions which we find it unnecessary to mention or discuss. His contention might be sound if the facts relied on by him were the only facts disclosed by the plaintiff's evidence.

While it was shown that Hendershot was driving at 80 miles per hour, 2,000 feet east of the private drive, when he saw the Dennis truck he slowed down to 65 miles per hour a considerable distance away from that point, and proceeded at what was not an unlawful speed. While he was proceeding west Dennis was coming down his driveway and passed entirely from sight behind the tree of 30 foot diameter just east of the driveway and near the edge of the highway. During all of that time Hendershot had a right to believe that Dennis would look to the west and the east to learn whether oncoming traffic compelled him to yield the right of way. We need not debate whether or not Dennis looked, or if he looked failed to see or ignored what he saw, for at a time when Hendershot was

about 300 feet in distance and slightly over 3 seconds in time away from the private drive, Dennis proceeded upon his driveway and onto the highway. Appellee argues that those facts disclose that Hendershot had a right to rely upon the assumption that Dennis would obey the law and would not negligently proceed upon the highway; and that when Dennis did so under the circumstances, an emergency was created that was the result of the acts of Dennis and not of his acts, and negligence cannot be charged against him, citing among others our decisions in *Railroad Co. v. Langley*, 70 Kan. 453, 78 Pac. 858; *Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663; *Barzen v. Kepler*, 125 Kan. 648, 266 Pac. 69; and *Schulz v. Chicago, Rock Island & Pac. Rld. Co.*, 167 Kan. 228, 236, 205 P. 2d 965. In the last cited case it was said:

"The rule in this jurisdiction is well established that in such a situation one who, by the negligent act of another, is placed in a position of danger which requires immediate and rapid action, without time to deliberate as to the better course to pursue, is not held to the strict accountability required of one situated under more favorable circumstances and is not guilty of contributory negligence as a matter of law if he does not exercise the greatest prudence or best judgment or choose the wisest or safest course in attempting to avoid the perils of the situation with which he is suddenly confronted (*Edgerton v. O'Neil*, 4 Kan. App. 73; *Railroad Co. v. Langley*, 70 Kan. 453, 78 Pac. 858; *Eaton v. Salyer*, 135 Kan. 411, 10 P. 2d 873)."

We are of the opinion that under the facts disclosed by all of the evidence it was a fair question for the jury whether Hendershot was guilty of negligence that was a proximate or legal cause of the injuries to and death of Adams, and that it may not be said as a matter of law that he was.

The judgment of the trial court in ruling upon defendant's demurrer to plaintiff's evidence is sustained.

HARVEY, C. J., dissents.