No. 42,789

EARL ATER, *Appellee,* v. BENNIE C. CULBERTSON and CHARLES W. SNYDER, *Appellants.*

(372 P. 2d 580)

Opinion filed June 9, 1962.

*Douglas G. Hudson,* of Fort Scott, argued the cause, *Douglas Hudson* and *Howard Hudson,* both of Fort Scott, were with him on the brief for the appellants.

*John L. Ibson,* of Fort Scott, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from a verdict and judgment for the plaintiff in an automobile collision case.

The primary question presented is whether the special findings of the jury establish contributory negligence on the part of the plaintiff as a matter of law.

The collision out of which this lawsuit results occurred in Bourbon County, Kansas, on July 9, 1958. The plaintiff (appellee) was operating a 1950 G. M. C. ¾ ton pick-up truck. The defendant Culbertson, employed by defendant Snyder (appellants), was driv-

ing a 1951 Ford 2-ton truck. It was loaded with lime and the over-all weight was 21,000 pounds.

The plaintiff emerged from a driveway on the north side of a county road. It was stipulated that the east-west road upon which the defendant was traveling was a public county road, and that the driveway from which the plaintiff emerged was a private drive owned by the county and used in connection with the county rock crusher and quarry. The county road was surfaced with gravel.

It was the plaintiff's theory that his pick-up truck had emerged from the private quarry road on the north side of the county road; that he had made a left turn; that he had driven east some 70 feet and had pulled over to the south side of the road and stopped with his right front wheel in the ditch a little on an angle when his pick-up was struck by the defendants' lime truck which was pro-ceeding west on the county road. The plaintiff testified the front of the lime truck struck the pick-up on the left side between the front wheel and the door post.

In his petition the plaintiff charged the defendants with six specific acts of negligence, among which was failure to have reason-able control of the vehicle.

The defendants by their answer set up the plaintiff's contributory negligence charging, among other things, that the plaintiff failed to yield the right of way. They also filed a cross petition. The drivers of both vehicles were injured and the vehicles damaged. Upon issues joined the case was tried to a jury which returned a verdict for the plaintiff in the sum of $22,124.88 upon which judg-ment was entered in the sum of $22,015.28, to which the plaintiff agreed by reason of patent error in arithmetic in the verdict.

Special questions submitted to the jury were answered in the following manner:

"1. Was the defendant, Bennie C. Culbertson, guilty of negligence which was a proximate cause of the collision? Answer: Yes.

"2. If your answer to the above question was 'yes', state what that negli-gence was. Answer: Failing to have his vehicle under reasonable control.

"3. Was the plaintiff, Earl Ater, guilty of contributory negligence which was a proximate cause of the collision? Answer: No.

"4. If your answer to the above question was 'yes', state what that contribu-tory negligence was. Answer:

"5. Please locate as accurately as possible the point of impact on the county road. Answer: 40 feet east of center of quarry road and center of east-west county road heading east.

"6. Please state whether the plaintiff's truck was moving or stopped at the time of impact. Answer: In motion.

"7. If your verdict is for the plaintiff, please itemize his damages, if any.

For medical and hospital expense and nursing care . . $ 2,824.88
For damages to plaintiff's truck . . . . . . . . . . . . . . . $ 400.00
For loss of wages . . . . . . . . . . . . . . . . . . . . . . . . . $ 900.00
For pain and suffering . . . . . . . . . . . . . . . . . . . . . . $ 2,000.00
For permanent injuries . . . . . . . . . . . . . . . . . . . . $15,000.00
For future medical expense . . . . . . . . . . . . . . . . . . $ 1,000.00"

Thereafter the defendants filed a motion for a new trial, a motion for judgment on answers to special questions notwithstanding the general verdict, and a motion to set aside the answer to special question No. 3. These motions were overruled and appeal has been duly perfected by the defendants presenting the questions hereafter considered.

Throughout this opinion we shall continue to refer to the parties as they appeared in the lower court.

It was the defendants' theory of the case that the lime truck was proceeding west, downgrade, on the county graveled road when the plaintiff's pick-up truck pulled out of the private quarry road on the north side, and that when the plaintiff pulled out onto the county road his pick-up was in such close proximity to the defendants' truck that the collision occurred. The defendants contend the answers to special questions Nos. 2, 5 and 6 establish as a matter of law that when the plaintiff emerged from the quarry road he failed to yield the right of way to the defendants. It was stipulated the plaintiff's pick-up truck was 16 feet long.

It was established that the vehicles after the collision came to rest opposite the west edge of the quarry road with both vehicles partially in the traveled portion of the county road and partially south of it. The undersheriff testified that he found skid marks of 51 feet from the center of the county road over into the ditch, measuring from the closest point on the plaintiff's pick-up in the direction from which the skid marks were made. He observed dirt, oil and water in the middle of the road, and from that point to where the vehicles came to rest was 51 feet.

The exhibits introduced in evidence disclosed that the quarry road did not meet the county road at 90 degrees but at a slight angle northwest from north. The exhibits also disclosed the two roads at the time of the collision to have been approximately 20 feet wide. The defendant Culbertson testified he was driving the

lime truck between 30 and 40 miles per hour in the center of the road and that the impact occurred in the middle of the road while the plaintiff's pick-up was moving. He testified the point of impact was at the east edge of the curved portion of the quarry road. The evidence disclosed, however, that the east corner of the quarry road as it joined the county road had been rounded to a considerable extent since the accident, and the exhibit from which this testimony was given did not represent the quarry road as it was when the accident occurred.

The defendants argue the jury adopted their factual theory of the case, but drew an erroneous conclusion therefrom. To support this argument they present their own interpretation of the answers given to the special questions.

The jury in special question No. 5 was asked to locate as accurately as possible the point of impact on the county road. By their answer they placed this point at "40 feet east of center of quarry road and center of east-west county road *heading east.*" (Emphasis added.) The defendants construe this answer to mean that the point of impact was in the center of the county road 40 feet east of the center of the quarry road. Under this interpretation the words "heading east" must be regarded as surplusage.

The rule is well established that special findings are to be construed liberally and that any ambiguity must be resolved in favor of the general verdict. In *Kitchen v. Lasley Co.*, 186 Kan. 24, 348 P. 2d 588, it was said:

". . . Under all our decisions a general verdict imports a finding upon all the issues of the case not inconsistent with the answers to special questions submitted, and such special findings are to be given such a construction, if possible, as will bring them into harmony with the general verdict. See *Giltner v. Stephens*, 166 Kan. 172, 200 P. 2d 290; *Hubbard v. Allen*, 168 Kan. 695, 701, 215 P. 2d 647; *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909; *Hurley v. Painter*, 182 Kan. 731, 736, 324 P. 2d 142. For numerous other decisions of like import see West's Kansas Digest, Trial § 343. . . ." (p. 29.)

While nothing will be presumed in favor of special findings as against the general verdict, it has been said, the special findings may be viewed and interpreted in the light of the testimony. (*Schroeder v. Nelson*, 157 Kan. 320, 326, 139 P. 2d 868; and *Hubbard v. Allen*, 168 Kan. 695, 701, 215 P. 2d 647.)

We do not think the words "heading east" in answer to question No. 5 can be ignored. Giving effect to these words places the point of impact in the center of the south lane, or in plaintiff's proper

lane of traffic. This interpretation is in harmony with the general verdict.

From the record it may be said there is evidence to support the special findings made by the jury. Several of the plaintiff's witnesses placed the skid marks of the lime truck as commencing on the south half and south shoulder of the county road.

The plaintiff's testimony pertinent to this point is as follows:

"There is a double entrance from the county road to the rock quarry. He drove his pick-up truck out the west entrance and pulled up where he could see east and west. He was going to the east. He saw a truck coming quite a little way and noticed he had plenty of time to pull out on the road. He pulled out on the road and started east, slow. The oncoming truck was 'from five to three hundred feet and there's where he started to wobbling, I just shot my truck over a little further, had my right front wheel clear over in the ditch just a little on the angle, and the closer he got to me the more he wobbled.'"

This evidence is sufficient to support the jury's finding that the defendant Culbertson did not have his vehicle under control, and it also supports the finding that the plaintiff was not guilty of contributory negligence which was a proximate cause of the collision. Insofar as the record discloses the jury found that the plaintiff emerged from the west lane, or right side, of the quarry road onto the county road and had proceeded 40 feet in an easterly direction in his lane of traffic driving at a slow rate of speed, when the defendants' truck collided with him in his own lane of traffic as the defendants' truck proceeded in a westerly direction out of control down the highway. It may therefore be said the answer to question No. 3 was consistent with the general verdict and in harmony with the answers to the special questions and the trial court did not err in its failure to strike this answer as inconsistent.

The defendants argue the only possible way the answers to special questions Nos. 5 and 6 could be reconciled with the negative answer to special question No. 3 would be that the defendants' truck was traveling at an extraordinary rate of speed. They further argue the jury's special finding, that the defendants' negligence consisted of lack of control, exonerated them of all other charges of negligence, including that of speed (citing *Roberts v. Railway Co.,* 98 Kan. 705, 161 Pac. 590; *Rasing v. Healzer,* 137 Kan. 516, 142 P. 2d 832; and *Stevens v. Allis-Chalmers Mfg. Co.,* 151 Kan. 638, 100 P. 2d 723). The foregoing argument and rule would have application to this case only if the court adopted the defendants' interpretation of the special findings and their theory of the evidence.

It must be conceded G. S. 1949, 8-523, as construed in *Adams v. Dennis*, 171 Kan. 32, 229 P. 2d 740, requires the driver of a vehicle entering a public road from a private driveway to yield the right of way to all other vehicles approaching so closely on the public road as to constitute an immediate hazard. The jury was properly instructed on this point but found against the defendants, and since there is some evidence to support such finding the matter has been resolved. Considering the evidence most favorable to the plaintiff we cannot say the plaintiff failed to yield the right of way as a matter of law.

The defendants argue it seems incredible that notwithstanding the concession of plaintiff's attorneys in arguing the case to the jury that the plaintiff could not recover unless their theory of the collision (70 feet or so east of the quarry road and while plaintiff's vehicle was stopped on the shoulder) was accepted by the jury as proved, the jury could nevertheless, in effect, adopt the defendants' testimony as to how the collision occurred but award damages to the plaintiff.

Actually the jury did not adopt the theory of either of the parties. Whether the distance between the point of impact and where the vehicles came to rest was 51 feet or 70 feet, or whether the plaintiff's vehicle was moving or stopped at the time of impact, are not of vital importance when viewed in connection with the over-all findings of the jury and the most favorable evidence adduced in support of such findings. The jury is not bound by the theory of either party. The fact that counsel for the plaintiff argued plaintiff's theory of the evidence and said plaintiff would not be entitled to judgment unless this theory were adopted, does not require a reversal of the judgment merely because the findings of the jury varied somewhat from the plaintiff's testimony, or the evidence of plaintiff's witnesses.

The jurors are the exclusive judges of the credibility of the witnesses. They are required to carefully and impartially consider all the testimony, and if possible, reconcile any apparently conflicting statements of the witnesses; but if after full and fair consideration they find the testimony is conflicting, they must then reject such parts of it as they believe to be least worthy of credit. They are at liberty to reject the entire testimony of any witness that they believe has willfully sworn falsely as to any material fact in the case, but they are not bound to do so. They may still give the testimony of such witness such weight as they think it is entitled to receive,

and if from a consideration of all the testimony they feel warranted in so doing, they may reject a part and believe a part of the testimony of such witness.

The fact that a jury rejects part of the testimony of a plaintiff in a lawsuit does not necessarily preclude findings favorable to the plaintiff, or prevent a judgment for the plaintiff. Here, for example, the jury found the point of impact to be at a place other than where either the plaintiff or the defendant Culbertson testified.

The defendants contend the trial court erred in submitting, over objection, special question No. 7 containing various items of alleged damage, such as "pain and suffering" and "permanent injuries." It is argued the giving of this special question suggested to the jury that they should allow damages for each of these items. This point is not well taken. No objection was made to an instruction given by the trial court which informed the jury that the plaintiff was entitled to recover such sum of money as would fully compensate for the injuries sustained. The jurors were instructed they were entitled to consider the health and physical condition of the plaintiff just before the injury, present health and physical condition, and how much the injury would impair health, if at all, in the future. They were also instructed they could consider the physical pain and suffering, if any, to which the plaintiff was or may in the future be subject as a result of the injury; and that after considering the entire case they could allow such sum of money as in their opinion would be fair and just compensation for the injury sustained. (See *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321.)

By a specific instruction on special damages the jury was given the amount of special damages for each of the first three items enumerated in question No. 7, without objection by the defendants. These amounts were undisputed.

Defendants next contend there was no evidence to support the jury's award of $1,000 in damages for future medical expense. There was evidence that the plaintiff took medicine three times a day which he purchased from a drug store under a doctor's supervision, and that it cost $8 or $10 per month. We think the jury was entitled to consider the plaintiff's condition along with the evidence offered and conclude what allowance should be made for future medical expense. On the record presented we cannot say the jury's award of $1,000 for future medical expense was unwarranted.

The judgment of the trial court is affirmed.