No. 19,745.

WALTER A. MUNGER et al., *Appellees,* V. IDA MAY MYERS (IDA
MAY BOWDEN) et al., *Appellants.*

SYLLABUS BY THE COURT.

1. EVIDENCE — *Communication with Deceased Person — Construction of
Statute.* The provision of the civil code (§ 320), which prohibits a per-
son from testifying in his own behalf in respect to transactions or
communications had personally with a deceased person in certain
cases, places a disqualification upon a witness as a witness rather than
a restriction upon the testimony as evidence.

2. SETTING ASIDE DEED—*Mental Incapacity of Grantor—Letters Written
by Deceased—Competent Evidence.* Letters written by the deceased
person to his son, who is seeking to recover property deeded by his
father to another in his lifetime, may be received in evidence, when
properly identified, to show the mental capacity of the deceased about
the time the letters were written and the deed was executed, and do
not fall within the prohibition of section 320 of the civil code.

3. EVIDENCE—*Objections to Evidence—Must be Specific.* An objection
that offered testimony is prohibited by section 320 of the civil code
should be specific in order to make a ruling thereon available as error.

4. SETTING ASIDE DEED—*Findings Sustained by Evidence.* Findings as
to the mental weakness of the grantor and that the conveyance was
obtained from him by undue influence of the grantee without consid-
eration are held to be sustained by the evidence.

Appeal from Harper district court; PRESTON B. GILLETT,
judge. Opinion filed December 11, 1915. Affirmed.

*Andrew G. Washbon,* of Harper, and *T. A. Noftzger,* of
Wichita, for the appellants.

*Donald Muir,* of Anthony, *A. L. Noble,* of Winfield, and *J. N.
Tincher,* of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: From a judgment in favor of plaintiffs
setting aside a deed to certain property located in the city of
Harper and awarding damages and costs defendants appeal.
At the trial the court, among other things, found that plaintiffs,
Walter A. Munger, Tilda E. Barney, Stella C. Robertson and
Ida C. Pettengill, are the only heirs at law of J. C. Munger,
deceased, who at the time of his death on March 21, 1913, was

nearly seventy-six years of age; that at the time of the death of J. C. Munger's wife on December 12, 1912, he was in failing health, and afterwards failed so as to be almost, if not entirely, irresponsible during the months of January, February and March preceding his death; that he owned the property herein involved; that defendant Ida May Myers came to Harper about December, 1912, or January, 1913, and resided with her husband across the street from the Munger home; and that on February 17, 1913, defendant Mrs. Myers unduly influenced J. C. Munger to convey his property to her without paying the $950 mentioned in the deed or any consideration whatever. The court also found that on March 1, 1913, J. C. Munger had on deposit in the bank $714, and at the time of his death on March 21, 1913, all of it had disappeared and was not accounted for save forty-three cents. The deed for the property from J. C. Munger to Ida May Myers was held to be null and void and a conveyance to plaintiffs was decreed and damages for withholding the possession of the property were adjudged.

On their appeal the defendants complain that the court erred in the admission of evidence and that the evidence does not support the findings and judgment.

One complaint is that Doctor Muir was allowed to testify as to the mental condition of Munger without sufficient knowledge of the man to qualify him to testify as an expert. The witness is a graduate of a medical school, had practiced medicine about thirty years and to some extent in the family of Munger. He had observed the condition and actions of Munger about the time in question and had given special attention to his mental state, and he stated that he discovered him to be in a very nervous condition, and, in his opinion, his mind had weakened and he was afflicted with a softening of the brain. The witness had the necessary skill and training and was sufficiently acquainted with Munger to be able to form an opinion as to his mental condition. Of course, the value of his opinion depended on the extent and intimacy of his acquaintance with Munger, his opportunity to observe and know the former as well as the present condition of his mind.

Several witnesses testified as nonexperts and these had an acquaintance with Munger about the time of the conveyance and described his habits and peculiarities as well as some ab-

normal actions. Defendants' objections to their testimony appear to relate to its weight instead of its competency. Nonprofessional witnesses who have a sufficient opportunity for observation may state the results of their observation and their opinion of the mental condition of another when accompanied by the facts upon which their opinions are based or where an opportunity is given to test the basis of their opinions by a cross-examination. (*Baughman v. Baughman,* 32 Kan. 538, 4 Pac. 1003; *Commercial Travelers v. Barnes,* 75 Kan. 720, 90 Pac. 293.) The testimony of these witnesses was admissible and tended to support the theory of the plaintiffs. Their means of observation, apparent ability to measure the mental capacity of the subject, and other recognized factors that may be resorted to in determining the force and weight of their testimony were all for the consideration of the trial court.

Objections were made to the admission of letters written by Munger to his son about the time of the execution of the deed. In one of the letters, among other things, Munger spoke of his infatuation for Mrs. Myers, described her as a half-breed Cherokee Indian and a beauty, and also spoke of her love for him. Another of the letters was written to the son the day the deed to Mrs. Myers was executed, in which Munger appears to chide his son for attempting to exercise a guardianship over him and insisting that he was able to attend to his own business, also saying that on that day he would place his money and property with persons who loved him better than did his only son. In a lengthy, rambling letter written to his son shortly after the execution of the deed Munger tells of many circumstances attending its execution and describes the wiles and influences that were used to induce him to make the deed, that it was obtained without consideration, of his tardy attempt to keep the deed from the record and how he was induced to give her other money which he had on hand. He derided himself and said, in closing, "Your loving dam Phool of a Pa." The last letter was a brief one to the effect that he did not think there was any chance to get his money and property back as everything had been done secretly and there were three of them to swear against him. The testimony was received, not to prove that Munger was overreached or defrauded by Mrs. Myers in the transaction nor to show that she had not paid the

consideration named in the deed, but was only admitted to show the mental condition of Munger from the time his wife died on December 12, 1912, until his death on March 21, 1913. The case was tried by the court without a jury and hence we must assume that the testimony received no consideration except upon the single issue of the mental condition of Munger and that no prejudice resulted from the testimony.

There is a contention that the letters should be regarded as communications or transactions between the deceased and his son, who is a party to the litigation, and therefore fall within the prohibition of section 320 of the civil code. The letters were identified by the son to whom they were addressed without objection. The defendants made a general objection to the letters, and further that they were hearsay, but the objection now made, that they constituted prohibited communications or transactions between the deceased person and a party to the action, was not brought to the attention of the trial court. To make the admission of such testimony available as error a specific objection should have been made. However, if the objection as made were treated as sufficient the admission of the evidence for the purpose for which it was received would not afford ground of reversal. It has been determined that a party to an action, if otherwise qualified, may testify as to the mental capacity of the deceased person with whom he had the dealings that are involved in the action. (*Grimshaw v. Kent,* 67 Kan. 463, 73 Pac. 92; *Harper v. Harper,* 83 Kan. 761, 113 Pac. 300.) The code restriction, it will be observed, is not directed against the transactions or communications but is a disqualification of certain witnesses to testify to certain things in certain cases. In one case a transcript of testimony given on a first trial when both parties to the transaction were living was received in evidence at a subsequent trial although one of the parties was then deceased, and it was held that no error was committed in admitting it. (*New v. Smith,* 94 Kan. 6, 145 Pac. 880.) In *Garten v. Trobridge,* 80 Kan. 720, 104 Pac. 1067, a letter of a deceased person was held to be admissible, and it was there declared that the disqualification of the code prohibition applied to witnesses and not to evidence. In a later case a witness was permitted to testify to the steps taken towards registering a letter with money enclosed which was

sent to a person that had since deceased, and that in due course he received a writing acknowledging the receipt of the money which was admitted in evidence, and it was ruled that the admission of the evidence did not violate the code restriction. (*Bryan v. Palmer*, 83 Kan. 298, 111 Pac. 443. See, also, *Daniels, executor, v. Foster and others*, 26 Wis. 686; *Minnis v. Abrams*, 105 Tenn. 662, 58 S. W. 645, 80 Am. St. Rep. 913.)

The letters in question, when identified, revealed their own testimony. The statements therein were not personally made to the witness, that is, they were not made face to face nor in the presence and hearing of the witness. No testimony concerning the statements in the letters was given by the witness, but the evidence was derived from another source and does not fall within either the letter or spirit of the code restriction which, as we have seen, is directed against the witness as a witness and not to the testimony as evidence. Testimony of the acts and sayings of Munger tending to show his mental condition, such as is shown by the letters, was competent evidence for the purpose for which it was received since it was obtained from legal sources and not from disqualified witnesses.

Some other objections were made to rulings upon the admission of evidence but we find nothing substantial in any of them.

It is finally contended that the evidence does not support the finding of the trial court. It is impractical to set out the testimony at length, but we conclude that it is sufficient to support the material findings of the court. It tended to show that Munger, who was about seventy-six years of age when the deed was made, was feeble in body and mind some time before the deed was executed and up until his death. It sustains the finding, too, that Mrs. Myers approached him with a proposition to buy his property, and presently took him into her home to care for him and soon had him apparently under her influence and control. While there is testimony to the effect that the consideration named in the deed was paid, other testimony warrants the inference that no consideration was ever received by Munger. There is a finding based upon evidence that Mrs. Myers, who claimed to have paid $950 for the property, offered it for sale within a few days after the deed was made for two-thirds of the specified consideration. There is testimony, too, to support the finding that she not only procured the property

from Munger without the payment of anything of value, but that she also obtained about $700 in cash which he then had on hand. Although witnesses were produced who testified that Munger acknowledged the receipt of the price of his property, others testified that some time after the deed was made and the money was alleged to have been paid he was very much distressed and asked a neighbor to help him to obtain the price of his house from Mrs. Myers, adding that "That woman hypnotized me." While the testimony is full of contradictions and that which supports some of the findings is meager, we conclude that it justifies the findings of Munger's mental weakness and that Mrs. Myers took advantage of his weakness and fraudulently induced him to transfer his property to her without consideration.

The judgment is affirmed.