MABEL K. STEPHENSON, v. DAVID I. STEPHENSON, ELLA A. STEPHENSON and CITIZENS NATIONAL BANK, a Corporation, Appellants, WILLIAM KEITH STEPHENSON, BRET HARTE STEPHENSON, MARJORIE STEPHENSON BOND and SUSANNA LEE STEPHENSON, Defendants.— No. 38258.—171 S. W. (2d) 565.

Division One, May 4, 1943.

Rehearing Denied, June 1, 1943.

*M. D. Campbell, A. D. Campbell* and *George J. England* for appellants.

*Russell D. Roberts* and *E. M. Jayne* for respondent.

 DOUGLAS, P. J.—This is an action to establish a trust, for an accounting, and to quiet title to property known as the Stephenson Hotel Building in Kirksville.

Plaintiff, the widow of Bret Stephenson, together with her husband owned and operated the Stephenson Hotel. In 1921 her husband died and some time later she sold the business and fixtures to another who rented and operated the hotel. She was living in California when she received letters from her mother-in-law, Anna Stephenson, as follows: "Kirksville, Mo. Oct. 5, 1928. My Dearest Mabel: I am sending you a Quit Claim deed to sign and return to me. Pecks are going to sue you for a debt of about ninty some dollars. John Mills has stood them off about as long as he can by telling them you were away on a visit. I saw three letters from them one of them said women were very fickle you might never come back or be gone fifteen years and to go ahead with the *suit* if they do it will start something all your creditors would jump in, it was kind of Mills to let me know about it this way they cannot do anything and we will have [567] time to see what P—— client will do. if he means business he will have to get busy I will get all I can for you and do everything possible for you this is the right procedure we are takeing the business is complicated when the fellow comes across with our price and everything is safe we can do business now trust me Mable you would have to trust someone and

I know you would rather trust me now I am going to help you and get all I can for you know I can do it and I will. God in me is 'mighty' just do as I tell you and pray that God blessings will be upon all we do I feel so sure that it is comeing out fine for you I have prayed for divine guidance and he has told me what to do not in words but in conviction it is wonderful I get such wonderful thoughts It almost awes me. Do right and trust God and he will direct you. Keep this letter you may need it if anything should happen. Mother S. remember I am responsible.

"Mable John Mills found out who P——— client is 'Wright' but I don't know whether he will accept our offer or not just as soon as I get this deed back I will advertise it and see what I am offered a friend of mine told me he would let me have some money if I wanted to buy it but we will exaust every means to get all we can for it but I will take care of it for you and get you a nice little bunch of money but we must get it so no one can bring anything more against it and when you sign this Quit Claim deed they will all wait until we are ready if I buy it Mr. Brewington is going to help but I will keep you posted in every way now don't·worry when this paper is signed no one can jump in and bring any thing against it if I can get chance (over) to sell my farm will turn it in on it if I buy the Hotel no one will be in with me Mr. Brewington will be secured another way. I just feel like everything is going to work out for you better than you had hoped for now don't be afraid to trust me I am responsible you could make me do the right thing but you will never have to do that for I am only trying to help my Darling Bret's Wife and darling children who are so dear to me you must be bright and hopeful and pray that everything will work out as we wish. God bless you my Darling daughter Do right and trust God and he will bless you. I will keep you informed of any change in any way Affect Mother Stephenson."

"Kirksville, Missouri, October—My dearest Mable; I forgot to tell you in my letter to be sure and sign that deed before a notary public and a witness witness to make it leagle. Just as soon as you send it to me I will do as you said, advertise it and see what is the highest amount we can possibly get for it and if that is not enough I will buy it from you.

"Brewington says I am doing all right, he advises me in every move I make and he is watching all who are concerned in it. He is a good business man and has promised to see me through and I trust him.

"I put my home in another agents hands today, I hope I can get out to . . . P——— was passing my house today I was sitting on the porch I called him in and asked him what his client was doing. He said he had not seen him today. I said, 'How much time does he expect to have to study over this deal, this offer does not last

indefinitely', if his client is waiting for something to start he and P———— will be surprised at it for just as soon as I get that Deed from you so you will be protected against that element I will advertise and see just what I can get and if there is nothing better I will buy it so just rest on your oars but get the Trust Deed back signed before a Notary Public then we will have creditors and that bunch where they can't do anything but the right thing.

"Do right and trust God, pray and hold the thought that everything will come out for the best which I think it will, Mother Kiss for Marge, Kiss for Susanna, Kiss for all of you."

In response to these letters plaintiff conveyed the property to Anna Stephenson by quitclaim deed dated October 10, 1928. Thereafter the latter managed the property, collected the rents, paid the charges against the property, renewed and reduced the loans against the property. Then Anna Stephenson became ill and on February 8, 1937 for a nominal consideration transferred the property to her son, David Stephenson. The latter transferred the property to his wife Ella on February 28, 1938 also for a nominal consideration. Anna Stephenson died in April, 1938. Plaintiff instituted this suit in October, 1940 claiming that her conveyance to Anna Stephenson was in trust. She asked that the whole title be vested in her and for an accounting.

The trial chancellor found plaintiff to be the owner of the property and vested full title in her subject to a deed of trust securing a loan against the property. He decreed that the conveyance by plaintiff to Anna Stephenson was in trust; that the transfers to David and Ella Stephenson were without consideration; and that an accounting need not be had. Thereupon an appeal was taken to this court. David and Ella Stephenson and plaintiff are the active parties in this appeal; the other parties apparently are no longer interested in the case and need not be dealt with.

The letters and the deed taken together create an express trust in the land conveyed. No particular words are required to create an express trust. Not even the words trust or trustee need be used. Nor is it necessary that the declaration of such a trust be contained in the instrument which transfers the legal title. The trust may be set out in one or several instruments executed at other times than that of the transfer of title, provided they show the existence of the trust when construed together. In re Soulard's Estate, 141 Mo. 642, 43 S. W. 617; Tootle-Lacy National Bank v. Rollier, 341 Mo. 1029, 111 S. W. (2d) 12; Ketcham v. Miller (Mo.), 37 S. W. (2d) 635. For a case on similar facts see Hall v. Farmers' & Merchants' Bank, 145 Mo. 418, 46 S. W. 1000. One of the letters, however, refers to the quitclaim deed as a "Trust Deed."

Plaintiff testified the handwriting of the letters was that of Anna Stephenson. Although the latter is dead, plaintiff is not dis-

qualified by Sec. 1887, R. S. 1939 from giving such testimony about the handwriting. That statute seals the lips of a party to a transaction when the other party is dead. Merely identifying handwriting is not testifying about the transaction itself. Our courts have previously ruled that a witness who is disqualified because of the death of the opposite party to the transaction may nevertheless testify as to the handwriting of the deceased. Banking House v. Rood, 132 Mo. 256, 33 S. W. 816 (overruled on other grounds); Bates v. Forcht, 89 Mo. 121, 1 S. W. 120; B. F. Goodrich Rubber Co. v. Bennett, 222 Mo. App. 510, 281 S. W. 75; Conley v. Johnson, 204 Mo. App. 185, 222 S. W. 891.

Plaintiff's letter transmitting the deed to deceased in which she stated she was sending the deed in consideration of the promises in deceased's letters was identified by a witness not a party to the transaction and was competent as evidence of the transaction. The statute deals with the competency of the witness, and not with the admissibility of evidence. See Munger v. Myers, 96 Kan. 743, 153 Pac. 497; Harper v. Wilson, 46 Fed. (2d) 785.

Appellants say the letters disclose a scheme to defraud creditors which plaintiff fell in with and transferred the property for that purpose. Accordingly, appellants conclude, plaintiff does not come into equity with clean hands so is not entitled to equitable relief but should be left in the situation in which she placed herself, under the rule most recently announced in Leeper v. Kurth, 349 Mo. 939, 163 S. W. (2d) 1031. This argument has no basis of fact. There is no charge nor is there any showing that the creditors were defrauded. On the contrary, the evidence indicates that they were paid as Anna Stephenson collected the income from the property. As a matter of fact appellants state in their answer that all plaintiff's indebtedness was paid, the inference being that such payments were made from the income collected from the property.

We do not find plaintiff guilty of laches because of her delay in bringing the suit. While the doctrine of laches is applicable alike to cestuis under implied and express trusts, courts are more reluctant to apply it in the latter case than in the former. Bogert, Trusts, sec. 948. A family relationship between the cestui and the trustee, as we have here, has been held to be a factor in excusing delay. Laughlin v. Laughlin, 291 Mo. 472, 237 S. W. 1024. Ordinarily, delay alone is not sufficient to sustain the charge of laches. Laches, in legal significance, is not mere delay, but delay that works to the disadvantage of another because of some change in the status of the property or of the parties. Rollestone v. National Bank of Commerce, 299 Mo. 57, 252 S. W. 394. Appellants show no injury arising from the delay in bringing this suit. This is not a case where the delay renders it difficult or impossible for the court to ascertain the truth of the matters in controversy as was the situation in Snow v. Funck (Mo.), 41 S. W. (2d) 2.

Appellants complain because plaintiff's petition does not contain an offer [569] to do equity to the estate of Anna Stephenson or her legal representatives. Such complaint is not tenable for the reason neither the estate nor the legal representatives are parties to this suit. Nor do appellants show how such an offer would affect them. Plaintiff does ask for an accounting with David Stephenson who was the grantee of Anna Stephenson and with Ella Stephenson, the present record holder of the land. This may be construed as an acknowledgment of their right to reimbursement if the account should be found in their favor because plaintiff would not be permitted to complain, after she has asked for an accounting, if the accounting results in a balance against her. Smith v. Holdoway Construction Co., 344 Mo. 862, 129 S. W. (2d) 894. Moreover, this court has held that pleading an offer to do equity is not a necessary condition to its enforcement. Certainly no court of equity would grant equitable relief to a party who, on his own part, refused to perform equitably. The enforcement of the principle of equity—he who seeks equity must do equity—is not dependent upon any form of pleading, but its application is in the conditions and provisions of the decree of the court whereby equitable terms are imposed as a condition precedent to the equitable relief granted. ''It is always within the power of a court of equity, where its decree is invoked, to require as 'the price of its decree' that the person invoking it shall submit to equitable terms, and accordingly a chancellor always inquires concerning the equities which the plaintiff must do, in order that he may be entitled to the relief which he seeks.'' Jones v. McGonigle, 327 Mo. 457, 37 S. W. (2d) 892.

Appellants now attack the petition for the first time on the ground it fails to state a cause of action because it avers merely that Anna Stephenson held title as trustee and does not allege how the trust arose. The general rule found in 65 C. J., Trusts, Sec. 970, states: ''In a suit to charge property conveyed by an absolute conveyance with a trust, it is not sufficient to allege merely that the conveyance was in fact in trust; but it must appear from the allegations that the conveyance was in trust expressly, or by implication, . . .'' Although the averment as to the trust is not sufficient, still the petition states a cause of action. Therefore an objection to the sufficiency of the petition raised for the first time on appeal comes too late. The rule is well settled that when a petition which pleads a cause of action, although defectively, is not assailed in the trial court it is too late to challenge the sufficiency for the first time on appeal. This rule was applied in Reed v. Tedford (Mo. App.), 72 S. W. 207 where the petition, seeking to determine interests under a will, pleaded merely the legal effect of the will. An objection to the petition raised for the first time on appeal was overruled. The case of State ex. rel. Smith v. Sevier (Mo.), 92 S. W. (2d) 102, relied on by appellants, is not in

point. It was not an appeal but was an original proceeding in this court in which the petition was immediately attacked by demurrer.

In view of our finding a trust had been created it becomes unnecessary to consider other points raised by appellants.

The judgment is for the proper party. It is affirmed. All concur.