No. 40,860

JOSEPH HURLEY and HENRY J. ZIEMBA, *Appellants*, v. J. H. PAINTER, et al., *Defendants;* EMMETT FARRELL, *Appellee.*

(324 P. 2d 142)

Opinion filed April 12, 1958.

*William H. Stowell*, of Phillipsburg, argued the cause, and *Doris Dixon Stowell*, also of Phillipsburg, was with him on the briefs for the appellants.

*A. W. Relihan, T. D. Relihan* and *Terry E. Relihan*, of Smith Center, were on the briefs for appellee Emmett Farrell.

The opinion of the court was delivered by

WERTZ, J.: This was an action for ejectment, quiet title, accounting and partition. Judgment was for the defendant Emmett Farrell;

and plaintiffs, Joseph Hurley and Henry J. Ziemba, appeal. The case is here a second time. In the first appeal, the order of the trial court sustaining a demurrer to defendant Farrell's evidence was reversed and the case was returned for a new trial. (*Hurley v. Painter*, 180 Kan. 552, 306 P. 2d 184.) In order to avoid duplication, that opinion is made a part hereof.

Briefly stated, the facts are as follows: At the time of Ellen Farrell's death on June 3, 1952, record title to 240 acres of land and two city properties in Phillips county stood in her name. Her only heirs at law were plaintiff (appellant) Joseph Hurley, her grandson, and defendant (appellee) Emmett Farrell, her son. More than one year had expired since her death and no will had been admitted to probate. Plaintiff Hurley quitclaimed an undivided one-fourth interest in the described real estate to plaintiff (appellant) Henry J. Ziemba, after which Hurley and Ziemba brought this action against defendant Farrell and others, alleging that said defendant was in possession of the property and praying that he be ejected and the property partitioned according to the interests of the parties (one-fourth to each of the plaintiffs and one-half to the named defendant).

After issues were joined, the parties, at a pretrial conference, entered into a stipulation which bound them in the trial of the case. The substance of the stipulation was that at the time of her death Ellen Farrell was the record title holder of the real estate involved; that probate of a purported will of Ellen's, devising all of the property to her son, Emmett, had been sought and denied; that defendant claimed the land by reason of an oral gift from Ellen during her lifetime, which property he claimed to have been in possession of since about 1948 and to have made permanent improvements thereon, paying taxes and liens; and that defendant had lived in one of the city properties with his mother for many years before her death.

Plaintiffs were permitted to file supplemental pleadings alleging that defendant was estopped from claiming to have received the land by oral gift from his mother by reason of his subsequent offer of Ellen's will for probate and his claim that he received the land by inheritance, bequest or devise.

The case proceeded to trial. The jury returned a general verdict for defendant and in answer to special questions found, among other things, that Ellen Farrell in 1948 orally gave all her property to her son, Emmett; that he entered into possession of the land in that year, made valuable and lasting improvements thereon, paid off

substantial liens, and otherwise materially changed his position. Plaintiffs' motions for judgment notwithstanding the verdict and for a new trial were overruled, and they appeal. We will summarize only so much of the evidence as is necessary to consider plaintiffs' contentions.

Plaintiffs first contend that the trial court erred in receiving in evidence defendant's Exhibit No. 4 over their objections. The exhibit reads as follows:

"Oct. 12, 1948"

"This is to prove that *I have given* all my poperty to my sun Emmett Farrell and he is to take care of me as long as i live. H to pay tax and all bills and for burial of me. He is to pay all debt on land that he has not alread paid." "ELLEN FARRELL."

[Emphasis supplied.]

In the course of defendant's examination, he testified, without objection, that he received the exhibit from his mother and that her signature appeared at the bottom thereof. When the exhibit was offered in evidence, plaintiffs objected on the ground that it was hearsay and a part of a personal transaction between defendant and the decedent; that its admission into evidence violated G. S. 1949, 60-2804. There is no merit to plaintiffs' contention. It will be noted that there was no objection to defendant's testimony, nor was there any motion to strike it. Plaintiffs' objections went solely to the admission of Exhibit No. 4 and not to the testimony of the witness. G. S. 1949, 60-2804 provides that no person shall be allowed to testify in his own behalf in respect to any transaction or communication with a deceased person where either party to the action claims to have acquired title, directly or indirectly, from such deceased person. It has been held that the disqualification of the statute runs to the witness and not to the evidence; that certain communications may be admitted, although certain witnesses may not testify to them. (*Garten v. Trobridge,* 80 Kan. 720, 104 Pac. 1067; *Munger v. Myers,* 96 Kan. 743, 153 Pac. 497.)

Here, even if objection had been made to defendant's testimony, the exhibit was admissible, as the witness DeYoung, a banker familiar with Ellen's signature, also testified that the signature on the note was hers. On this and other evidence, the exhibit was properly received. Moreover, in the exhibit, Ellen by declaring that she had given all her property to her son disavowed her proprietary interest in the property. The note was therefore admissible under the well-recognized declaration against interest exception to

the hearsay rule. In *Mentzer v. Burlingame,* 85 Kan. 641, 643, 118 Pac. 698, we said:

"The declarations of a deceased person made against his pecuniary or proprietary interest concerning facts within his knowledge, which are material and relevant to the issue, are admissible in evidence . . . (1 Ell. Ev. § 434 *et seq.;* 1 Greenl. Ev., 16th ed., §§ 147-149; 1 Wharton, Ev., § 226; 2 Wig. Ev. §§ 1455-1470.) The admissibility of the evidence rests upon the improbability that one will admit that which it is for his pecuniary interest to deny."

Testimony by witnesses Grieb and Granville that in August, 1950 and September, 1951, respectively, Ellen told them she had given all her property to Emmett is objected to by plaintiffs as being hearsay and therefore inadmissible. Ellen's statements were declarations against her interest and admissible under the above-mentioned rule.

Plaintiffs next contend that the court erred in excluding certain exhibits and testimony. Three of the objections go to the exclusion of newspaper clippings concerning the death of plaintiff Hurley's parents. There was no indication of the purpose for which the exhibits were offered, and we deem them irrelevant. Two other exhibits offered were public records of the Phillips county agricultural stabilization and conservation committee, which showed Ellen Farrell as owner until 1951 of the property involved herein. It was established that the information on the records came from the tenants on the property. It is clear to us that statements made by the tenants were not binding on either Ellen or Emmett and the records were properly excluded. (*Brent v. McDonald,* 180 Kan. 142, 155, 300 P. 2d 396.)

Another objection is to the refusal of the court to allow the court reporter in the proceedings in which probate of Ellen's purported will had been sought and denied to read Emmett's testimony in those proceedings to the effect that his mother owned all the property involved at the time of her death. Emmett Farrell, upon interrogation, testified:

"Q. And at that time didn't you testify that at the time of her death that your mother owned this land—have a 240 acre farm, a residence in Prairie View and this other—

"A. (Interrupting) Well, it was in her name.

"Q. Didn't you testify at that time she owned it?

"A. Well, anything that's in your name, you can't take it away from them or it aint yours until you get it in your name, that is, legally.

"Q. At that time did you feel that it was her property then?

"A. No, I didn't feel it was her property. I felt it was mine, but legally it was her property."

On this basis, plaintiffs sought to introduce the court reporter's testimony, claiming that it was admissible as impeachment evidence for which a proper foundation had been laid, or as an admission of the defendant which needed no foundation. Neither of these contentions is well taken. The evidence was neither an admission nor proper impeaching testimony and did not go to prove any issue in the case. The above-quoted statements by defendant did not contradict the statements made and sought to be introduced in the probate proceedings. In the testimony, defendant admitted that "legally" the property was his mother's at the time of her death; that "it was in her name." The court reporter's testimony went to this point, which was admitted by the defendant, and hence there was no conflict between the quoted testimony and the testimony sought to be introduced. Indeed, the question of record ownership was never in issue but was admitted, in the pre-trial stipulation, to be in Ellen. The issue in this case was whether Ellen Farrell had made a gift of the property to her son *despite* the fact that record title at all times stood in her name.

Other objections by plaintiffs go to the giving of certain instructions and the failure to give other requested instructions and special questions. We need not set out in detail all the instructions and questions involved. Suffice it to say, we have carefully examined the instructions and questions submitted to the jury. We find that they accurately and fairly covered the issues raised by the pleadings and the evidence and did not unfairly emphasize defendant's side of the case. The requisites of a valid oral gift were defined and given to the jury, as was the question of estoppel. Plaintiffs' requested instruction and special question dealing with the issue of contract to make a will or promise to make a gift in the future were not supported by the pleadings or the evidence adduced at the trial.

Similarly, plaintiffs protest the court's action at the hearing on the motion for new trial in sustaining defendant's objection to the offer of testimony by Loren Gould, the foreman of the jury, to the effect that he thought the evidence showed an agreement by Ellen Farrell to will the property in question to Emmett Farrell. This testimony was properly excluded as an attempt to impeach the verdict of the

jury. In *Anderson v. Thompson,* 137 Kan. 754, 758, 22 P. 2d 438, we said:

"Public policy forbids that after the jury has tried the case the court shall, on motion for new trial, proceed to try the jury. A verdict may not be impeached by an inquiry which reaches a juror's views or the reasons for those views (*L. & W. Rly. Co. v. Anderson,* 41 Kan. 528, 21 Pac. 558), or which reaches what influenced those views (*Matthews v. Langhofer,* 110 Kan. 36, 202 Pac. 634; *Jones v. Webber,* 111 Kan. 650, 207 Pac. 837; *Stone v. City of Pleasanton,* 115 Kan. 378, 223 Pac. 312). Besides that, the jury being what it is, jurors will act like human beings in the jury room, and will indulge in bluster and hyperbole and animated irrelevancies. Not only does the law presume a juror respects the obligation of his oath and votes his convictions, but generally he in fact does so; and due allowance must be made for some exuberance in jury-room discussion or the court must keep on granting new trials in important cases until a perfectly spiritless jury can be secured."

Plaintiffs contend that the court erred in overruling their motion for judgment notwithstanding the verdict, basing their contention on the answers to special questions regarding the time certain expenditures and improvements were made on the property by defendant and that some were subsequent to Ellen's death. Plaintiffs overlook the fact that the jury found defendant, after and in reliance upon the oral gift of the land by Ellen and with her knowledge and consent, made lasting and valuable improvements thereon, paid off substantial liens, took care of his mother for many years, and otherwise materially changed his position. No motion to set aside these findings was ever made, nor do plaintiffs contend there was a lack of evidence to sustain them. We state in *Long v. Foley,* 180 Kan. 83, 299 P. 2d 63, our often-repeated rule that a motion for judgment on the special findings *non obstante veredicto* admits that for purposes of ruling on the motion all special findings are supported by evidence and unless such findings clearly overthrow the general verdict such verdict must be permitted to stand. (5 Hatcher's Kansas Digest, Trial, § 312.) Moreover, it is stated in *Cain v. Steely,* 173 Kan. 866, 252 P. 2d 909, that a general verdict imports a finding in favor of the prevailing party upon all the issues in the case not inconsistent with the special findings, which are to be given such a construction, if possible, as will bring them into harmony with the general verdict; and in considering answers of the jury to special questions, the court is not permitted to isolate one answer and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. In the instant case

we have carefully analyzed the answers to the special questions and find them, when construed together, to be in harmony with the general verdict.

Plaintiffs' other contentions have not been overlooked. They have been considered and found without merit sufficient to justify a reversal of the judgment.

The judgment of the lower court is affirmed.

It is so ordered.

JACKSON, J., not participating.