No. 44,688

Lucille Thompson, *Appellee,* v. Marlin D. Norman, *Appellant.*
(424 P. 2d 593)

Opinion filed March 4, 1967.

*Darrell D. Kellogg,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning, Richard C. Hite, Roger Sherwood,* and *Richard L. Honeyman,* all of Wichita, were with him on the brief for the appellant.

*Patrick J. Warnick,* of Wichita, argued the cause, and *Warner Moore* and *Robert E. Burchfiel,* both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action for damages for personal injuries growing out of an automobile collision. A jury trial resulted in a verdict for plaintiff. Defendant's appeal is based principally upon exclusion of evidence and instructions to the jury.

On December 20, 1963, at about 8:00 a. m. at an intersection in the city of Wichita, a collision occurred between an automobile driven by the plaintiff, Lucille Thompson, and one owned by Howard Stamm. The identity of the driver of the Stamm vehicle is in dispute. At the time of the collision Howard Stamm, one Larry Kindsvater and the defendant Marlin Norman were occupants of the Stamm automobile. According to the evidence it was being driven either by Larry Kindsvater or by the defendant Norman.

The defendant was eighteen years of age, Stamm was nineteen and Kindsvater was twenty-three. All lived in Anthony, Kansas. Defendant and Stamm were friends of long-standing. Several hours prior to the collision, and at approximately 5:00 a. m. Stamm and defendant picked up Kindsvater who had finished a night work shift at a grill in Anthony. Stamm was driving the automobile. The group drove around in Anthony for a short period, then started for Wichita. The testimony regarding their activities thereafter is in conflict as will be shown.

The plaintiff's evidence pertinent to this appeal consisted of her own testimony, that of two police officers, her husband, her mother, her sister and Larry Kindsvater.

Plaintiff testified that at the time in question she was taking her son and a neighbor's child to school, driving east on Esthner street; at its intersection with Millwood street, a north-south street, there is a yield sign which controls southbound traffic on Millwood street prior to entering the intersection; as she approached the intersection she was traveling about twenty to twenty-five miles per hour; she looked both ways but did not see any cars; she never saw the car that hit her, she just heard a loud explosion and remembered nothing until she woke up in the hospital.

The police officers testified as to their investigation at the scene of the collision soon after it occurred; the point of impact was located in the southwest quadrant of the intersection, plaintiff's automobile being knocked sideways sixty-four feet; Norman, Stamm and Kindsvater were present; defendant Norman stepped forward and identified himself as the driver of the Stamm vehicle; the officers checked the brakes of the Stamm automobile and found it had none; defendant stated the brakes had failed on the Kellogg viaduct and they had stopped and checked them and found there wasn't anything they could do with them and had continued on; one officer detected an odor of beer in the Stamm automobile; defendant and Stamm stated they had drunk a couple of beers before leaving Anthony or Harper; defendant signed a traffic accident report stating he was the driver and describing the collision as follows:

"Going south on Millwood and brakes failed to work. There was a yield right of way—could not stop—Did not see yield right of way at the time. Hit brakes and would not work."

The officers arrested defendant for failing to yield the right of way and for driving with defective brakes.

Plaintiff's husband, mother and sister testified that after plaintiff had been in the hospital for about a week Stamm and the defendant Norman visited her at the hospital and that defendant stated he was the driver of the vehicle which struck her.

Plaintiff offered the deposition of Larry Kindsvater, it appearing that neither party could procure his attendance as a witness at the trial. In the deposition Kindsvater testified that prior to reaching Wichita the group stopped for personal reasons and Norman started driving the car and continued driving until the time of the collision; following the driver change Kindsvater fell asleep but was awakened after arriving in Wichita and prior to the collision by someone "hollering" and Norman pumping the brakes; there was a conversation about the brakes and Norman said he wished the brakes had been fixed; Kindsvater went back to sleep and did not awaken until seconds before the collision when Norman started pumping the brakes again; the three waited at the scene until the police arrived; Norman told them that he, Norman, was driving; Kindsvater denied that he was driving the car; he had no driver's license at the time, having lost it as a result of a reckless driving conviction; he had previously had another wreck near Coldwater; he knew nothing about a whiskey bottle at the time of this collision; he had had no whiskey or anything else to drink except one capful prior to leaving Anthony; he further denied there was any agreement among the three of them right after the collision for someone else to take the rap for his driving inasmuch as he had no driver's license; he paid for Norman's bond and part of his fine, about $53.00 in all, because he felt it was his responsibility since they had taken him to Wichita. He further testified he knew the brakes on the automobile were bad; he had chummed around with Stamm and Norman and had heard them talk back and forth that they should get the brakes fixed but they never had.

Defense testimony consisted of that of Howard Stamm and of the defendant Norman. Both denied Norman was driving the car at the time of the collision; they testified they had gone to Wichita so Kindsvater could do some Christmas shopping; that at the last stop prior to reaching Wichita Kindsvater commenced driving and continued to do so until the time of the collision; that when they picked him up he, Kindsvater, had two bottles of whiskey from which Kindsvater and Stamm continued to drink; that upon ap-

proaching the intersection in question Kindsvater was speeding, driving about fifty miles per hour; that Norman noticed the yield sign and told Kindsvater to stop; Kindsvater hit the brakes which failed and he started pumping them; Kindsvater could not stop and slid into the side of plaintiff's automobile; after the collision Stamm ran down the street and hid the whiskey bottles; Stamm testified Kindsvater asked if either of the other two would say he had been driving since Kindsvater had no license and had been drinking; Stamm further testified that Kindsvater indicated he would pay the damage and the fine if someone else would take the blame; both Norman and Stamm admitted that Norman told the police officers that he, Norman, was driving; Norman was booked in jail and released on bond paid for by Kindsvater.

Defendant Norman admitted telling the police the brakes had failed a couple of times; he also testified the brakes had failed a few times on the way up. Howard Stamm testified that Kindsvater did say something about the brakes as they were coming off the viaduct.

While the defendant Norman was testifying he was asked upon direct examination about the conversation between the three boys immediately following the collision as to who was to assume responsibility as driver. Plaintiff's objection to this line of testimony as hearsay was sustained. Defendant assigns this ruling as error.

Later on, the same questions were put to Howard Stamm and objections were at first similarly sustained. However, while Stamm was still testifying, the court receded from its position on this testimony in the following colloquy:

"THE COURT: The ruling on hearsay testimony will be modified to permit *witnesses* to testify as to what *they* heard between the defendant and Kindsvater; that would be proper under these circumstances.

"MR. MOORE: I didn't hear the ruling.

"THE COURT: *Witnesses* will be permitted to testify concerning what *they* heard between the defendant and Kindsvater; limited to that.

"MR. FANNING: All right.

. . . . . . . . . . .

"THE COURT: . . . We will permit under these exceptions discussions between the defendant and Kindsvater." (Emphasis supplied.)

Then, as already indicated in the summary, Stamm was permitted to relate that Kindsvater asked one of them to say he was driving because he, Kindsvater, did not have a license and had been drinking too much and would get in a "bunch of trouble";

that they kept talking and then Norman said he would.

We perceive no reason why Norman could not have, if recalled as a result of the change in ruling, given the same testimony, and, in view of that change, we cannot premise error in the prior exclusion. The fact Norman did not avail himself of the opportunity does not change this conclusion.

The next assertion of error rests also upon exclusion of evidence. Defendant offered to prove by the testimony of his sister that on the evening of the collision he talked with his sister and told her he was not driving the car at the time of the collision. Plaintiff's objection to the offer of the sister's testimony was sustained. Plaintiff asserts that the statement should not have been received because it was a self-serving declaration.

Our law of evidence is now codified (K. S. A. 60-401, *et seq.*). In determining admissibility the starting point is K. S. A. 60-407, which provides:

"Except as otherwise provided by statute . . . (f) all relevant evidence is admissible."

Our code prescribes no exception excluding evidence because of its self-serving nature. Being relevant, the statement may not be excluded upon that basis.

The statement is, however, hearsay, being one made out of court and offered to prove the truth of the matter stated therein, and is therefore inadmissible (K. S. A. 60-460) unless within an exception to the hearsay rule. Defendant asserts it should have been received as such an exception. Assuming, without deciding, that it might have been so received, we cannot say its exclusion was prejudicial. The defendant himself did testify, without objection, as to this same conservation with his sister, stating he related the true facts to her. The sister's testimony would not have added materially to the weight or clarity of that which the defendant had already related; it was therefore cumulative and its exclusion is harmless error (*Big Chief Sales Co., Inc., v. Lowe,* 178 Kan. 33, 283 P. 2d 480; *In re Estate of Gereke,* 165 Kan. 249, 195 P. 2d 323; *Glover v. Bux,* 150 Kan. 55, 90 P. 2d 1117).

The defendant also offered to prove by the testimony of his sister that about two weeks after the collision she had a conversation with Larry Kindsvater at the grill where both worked in which Kindsvater stated he was driving the automobile at the time of the collision. Upon objection this evidence was excluded.

Defendant contends the evidence was admissible as an exception to the hearsay rule under subparagraphs (*a*), (*j*) and (*l*) of K. S. A. 60-460.

Subparagraph (*a*) prescribes as such an exception a statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement. Defendant argues that inasmuch as Kindsvater's deposition was offered at the trial he thereby became such a person mentioned in the proviso. The fallacy in this argument lies in the fact that in the deposition Kindsvater was never confronted with his alleged statement to defendant's sister nor asked anything about it; in fact there is no indication that at the time the deposition was taken counsel for either party was even aware of any contention Kindsvater had made such inconsistent statements to the sister, so as to furnish opportunity for confrontation. Had he been so confronted there would be more ground for applying (*a*); the trier of the fact by having all the surrounding circumstances of the unsworn statement would be in better position to determine which statement was the more reliable. As it is we hold the test of availability for cross-examination under the particular circumstances is not met within the meaning of this exception.

Subparagraph (*j*) of 60-460 provides as an exception to the hearsay rule the following:

"Subject to the limitations of exception (*f*), a statement which the judge finds was at the time of the asertion so far contrary to the declarant's pecuniary or proprietary interest or so far subjected him to civil or criminal liability or so far rendered invalid a claim by him against another or created such risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true."

This broadens our former case law in the realm of declarations against interest by those not parties to the action nor in privity with a party to the action, as exceptions to the hearsay rule. Formerly there was a requirement of unavailability of the declarant as a prerequisite for reception of this character of testimony, and declarations were limited to those against the pecuniary or proprietary interest of the declarant (*Hurley v. Painter,* 182 Kan. 731, 324 P. 2d 142). Now, the statute dispenses with the requirement of unavailability and expands the interests to include penal or social.

The statute does, however, require, as a preliminary measure of trustworthiness, that the trial judge, prior to admission of such a

declaration, make a finding that the character of the declaration was of such nature a reasonable man would not make it unless he believed it to be true. Probability of veracity is the safeguard sought; the reasonable man test is the criterion to be used. The judge may in a particular case be faced with a difficult decision where caution should be exercised; in making it he necessarily must be vested with a wide discretion. And it should be kept in mind he is concerned with admissibility, not weight, of evidence.

We would not attempt to lay down nice, hard and fast rules governing the trial judge's action. In determining admissibility he may consider the nature and character of the statement, the person to whom it was made, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which it was made.

In the case at bar the trial judge excluded the declaration. In doing so he did not explain his reasoning thereon, but implicit therein was a negative finding as to foundational requirements. At one point the trial judge did exclude certain testimony relating to statements by Kindsvater because the matter was not presented at pretrial conference, but the record does not indicate this as the basis for the exclusion now being considered. The proffer was as already indicated. It was amplified somewhat thereafter by affidavit filed with defendant's posttrial motions.

The trial judge had before him little of the circumstances surrounding the incident upon which to make an appraisal and nothing about the relationship of the parties except that Kindsvater and the witness worked at the same place and that the witness was a sister to the defendant—the same defendant who by his own statement had participated in fabrication in this case at its very inception, and thereafter, as to who was driving.

The burden was upon the defendant to satisfy the foundational requirements prior to admission of the declaration. Whether these requirements were satisfied is a matter committed to the discretion of the trial judge. Under all the circumstances we cannot say as a matter of law the trial judge abused sound discretion in excluding this evidence or that justice has miscarried by reason of the exclusion.

Defendant further argues the statement was admissible under the first clause of subparagraph (*l*) of 60-460 as a statement of plan, motive and design. The contention misconstrues the import of this

provision. It is concerned only with a declaration of a presently existing subjective condition, that is, a specified mental or physical condition existing at the time of the utterance, which necessarily includes an element of *res gestae*, if not true spontaneity (see Gard's Kansas Code of Civil Procedure, § 60-460 [*l*]). In the case at bar Kindsvater's state of mind two weeks after the collision was immaterial on the question at issue, and the statement did not qualify under this exception.

Treated as evidence of a prior contradictory statement offered for impeachment only under K. S. A. 60-422 .(as distinguished from a declaration against interest) its admission remains in the discretion of the trial judge, absent an opportunity by the witness (Kindsvater) to identify, explain or deny the statement. The flexibility of the rule derives from its intendment to prevent unfair surprise. Much already said applies here. We find no abuse of discretion in the exclusion for this purpose.

We turn now to alleged errors in the instructions. In his written instructions the trial judge summarized the respective contentions of the parties and instructed on the law of negligence generally applicable thereto, including contributory negligence, proximate cause, burden of proof, preponderance of evidence and credibility of witnesses. We need not detail them except to say they specifically pointed up the defense that Kindsvater and not the defendant Norman was the driver of the car. Then, after the giving of the written instructions, the judge instructed the jury orally. He suggested the jury answer first the question as to who was driving the car, and he outlined action to be taken thereafter, depending on the answer found. He made other suggestions about which there is no complaint and concluded by stating that "So far as the negligence of the driver of the defendant's car is concerned, such negligence exists as a matter of law under the facts and circumstances of this case."

Prior to examining this oral instruction on its merits, we feel impelled to comment on the procedure employed. It is, of course, no longer required under our procedural code that instructions to a jury in a civil case be in writing. But we think the better practice is, where some of the instructions are to be given in writing, then all material instructions given should be in writing. To give part in writing and part orally on material issues presents too much opportunity for undue emphasis and inadvertent error and

renders the instructions in their entirety less likely to be cohesive and understandable. Also, counsel have less opportunity to make a satisfactory record of their objections outside the presence of the jury.

Defendant contends the judge erred in instructing the jury if it found the defendant to be driving, that he was negligent as a matter of law. He asserts the issue of his negligence was a fact question for the jury. Defendant's entire argument on this point is based on his contention that failure of brakes in a sudden manner does not necessarily constitute actionable negligence, citing *In re Estate of Cross*, 186 Kan. 590, 352 P. 2d 427.

Unfortunately for defendant the record contains no evidence of sudden brake failure at the time of the collision. To the contrary, the testimony of all three of the occupants of the Stamm automobile indicated the brakes had failed previously and yet in spite of this knowledge, operation of the automobile with defective brakes continued up to the time it sped through the traffic control sign into plaintiff's vehicle. This contention of sudden brake failure being the sole basis of defendant's complaint against the instruction, we hold the instruction was not improper. We should point out that another instruction left it to the jury to determine whether any negligence of defendant was the proximate cause of plaintiff's injuries.

Defendant also asserts certain written instructions were erroneous in that they did not indicate that if the evidence were evenly balanced then plaintiff could not recover and they had the effect of placing upon defendant the burden of proving who was driving the Stamm automobile at the time of the collision. His argument is based upon one isolated instruction which, we think, is taken out of context. The instructions are to be considered as a whole and in their entirety, and each instruction is to be considered in connection with all other instructions in the case (*Schroeder v. Richardson*, 196 Kan. 363, 411 P. 2d 670). The trial judge definitely instructed that plaintiff contended the defendant Norman was driving the automobile; he also instructed that contentions of the parties must have been proved by a preponderance of the evidence (which was defined) before such contentions could be accepted as true. Taken as a whole, we find the instructions unobjectionable and adequate.

Defendant, pursuant to K. S. A. 60-249(*b*), requested the trial judge to submit to the jury a written interrogatory as to who was

driving the Stamm automobile at the time of the collision. The request was denied and only general forms of verdict were submitted to be answered by the jury. Defendant predicates error in the refusal.

Our 60-249($b$) is substantially the same as Federal Rule 49($b$) with respect to which in 2B Barron and Holtzoff, Federal Practice and Procedure, § 1058, we find the following:

"The submission of interrogatories is discretionary and request may be denied even though the questions relate to issues of fact raised by the pleadings or evidence." (p. 354.)

Federal decisions support this view. It is sound and we follow it.

As indicated, the instructions adequately presented the issue of identity of the driver of the Stamm automobile and were such that inherent in a general verdict for plaintiff was a finding that defendant was the driver. The subject matter having been fairly covered, we cannot say the refusal to submit the requested interrogatory amounted to abuse of discretion.

Other matters raised by defendant have been considered but do not warrant further discussion.

The judgment is affirmed.

APPROVED BY THE COURT.